Dolphin G. **THOMPSON**, Appellant,

v.

The **EVENING STAR NEWSPAPER COMPANY**, Appellee.

No. 21171.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 14, 1968.

Decided April 11, 1968.

12. One convicted under § 22–2206 is liable to a fine up to $5,000 and/or imprisonment up to 5 years.

Mr. Charles P. Howard, Jr., Baltimore, Md., for appellant.

Mr. Francis L. Casey, Jr., Washington, D. C., with whom Mr. Robert C. Maynard, Washington, D. C., was on the brief, for appellee.

Before DANAHER, WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

The forty-two million dollar libel suit filed by appellant was terminated by the granting of summary judgment in the District Court. It is contended there were material issues of fact requiring a trial. We disagree and therefore affirm.

These facts are uncontested: Appellant played an active role in the campaign of the "Dedmon slate" in the Democratic primary held in the District of Columbia in May 1964. This was the year in which the voters of the District of Columbia were to have their first opportunity to vote, in November, in a national Presidential election. At stake in the May primary were certain political offices within the Democratic Party: delegates to the Democratic National Convention; two members of the Democratic National Committee; and the members of the District of Columbia Central Committee. There were three slates. The so-called Dedmon-McGerr Slate was headed by Jesse O. Dedmon, candidate for Democratic National Committeeman, and Patricia McGerr, candidate for Democratic National Committeewoman. Appellant, a public relations man in the District of Columbia, was admittedly one of the founders and leaders of the group advocating the Dedmon-McGerr slate, and was chairman of the Jesse Dedmon-Patricia McGerr Democratic Campaign Committee.

The Evening Star, defendant-appellee, published material allegedly defamatory of appellant on three occasions. In one article he was characterized as having been "chief local spokesman for Malcolm X and his Black Muslim Mosque." Another article, published after the election, expressed satisfaction at the voters' rejection of the Dedmon slate and its "blatantly racist appeal." The third expressed the editorial opinion of the *Star* that appellant had indulged in appeals to racist prejudice.

■■■ Under the rule of New York Times Co. v. Sullivan,[1] a publication defamatory of a public official is not actionable unless made with actual malice— that is with knowledge that it was false, or with reckless disregard of wheth-

---

1. 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

er it was false or not. In Associated Press v. Walker, a majority of the Court held this rule applicable to "public figures." [2] We think it plain that appellant was a "public figure" within the meaning of *Walker* and Curtis Publishing Co. v. Butts.[3] He was not so well-known as Butts and Walker, but that is not controlling. He clearly, played a role in "the resolution of important public questions."

In this country political parties are an integral part of the democratic process, providing an opportunity for citizens, exercising their constitutional freedom of association, to participate in discussion of issues of the day and to play a role at a critical juncture in the formation of the governments that will staff and operate the machinery of the state. It is part of the democratic evolution of our country that primary elections have increasingly taken the place of private clubs and close knit caucuses, to select both the holders of party office and nominees for public office. The fitness of candidates for political party office is no less a public issue than the fitness of candidates for public office. The public plainly has a vital interest not only in the calibre of candidates for political office, but in the nature of the groups or factions supporting the candidates, and the quality of candidates' spokesmen and backers are appropriate considerations to be taken into account. They "often play an influential role in ordering society." [4]

Appellant did not confine himself to private discussion [5] of the issues in the primary, but took a prominent role in a group appealing for public support.

■ Since the very pendency of a libel action may cut across the public interest in free and untrammeled speech on public issues, a public figure cannot resist a newspaper's motion for summary judgment under Rule 56 by arguing that there is an issue for the jury as to malice unless he makes some showing, of the kind contemplated by the Rules, of facts from which malice may be inferred.[6] This our appellant plainly did not do.

The Star complied with local Rule 9 (h)[7] by filing a statement of the mate-

---

2. The main caption of the case is Curtis Publishing Co. v. Butts. *See* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Reference is here made to the opinion of Chief Justice Warren, concurred in as to this ruling by Justices Black, Douglas, Brennan and White.

The opinion of Justice Harlan, concurred in on this point by Justices Clark, Stewart and Fortas, sets forth the view (388 U.S. 130, at 155, 87 S.Ct. 1975) that a "public figure" who is not a "public official" may recover· damages for defamatory falsehood substantially endangering his reputation, even in the absence of actual malice, on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.

3. *Supra* note 2.

4. Opinion of Chief Justice Warren, *supra* note 2, 388 U.S. at 164, 87 S.Ct. at 1996.

5. *Cf.* Afro-American Pub. Co. v. Jaffe, 125 U.S.App.D.C. 70, 366 F.2d 649 (1966) (en banc).

6. Washington Post Co. v. Keogh, 125 U.S. App.D.C. 32, 365 F.2d 965 (1966).

7. Rule 9 ("Motions") of the Rules of the U.S. District Court for the District of Columbia, provides in paragraph (h), as amended February 5, 1960:

"(h) MOTIONS FOR SUMMARY JUDGMENT. In addition to the points and authorities required by subparagraph (b) of this Rule there shall be served and filed with each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure a statement of the material facts as to which the moving party contends there is no genuine issue.

"Any party opposing the motion, may, not later than three days prior to the hearing, serve and file a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

"In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion."

rial facts as to which movant contends there is no genuine issue. Plaintiff did not comply with the rule's requirement that a party opposing summary judgment file a concise "statement of genuine issues," setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated. The local rule specifically provides that in the absence of such statement the court may assume the truth of the facts as set forth by the moving party. The Star accompanied its motion and statement with affidavits by the authors of the allegedly defamatory articles, describing the research undertaken to get their facts, setting forth their belief that the articles as published were true, and specifically denying they were in any way animated by malice towards plaintiff. Plaintiff filed no counter-affidavits disputing any of the assertions in these affidavits. He did not seek deferment of the ruling on the motion for summary judgment in order that he might utilize discovery procedure.[8]

Plaintiff, in effect, relied on his pleadings to create an issue of fact.[9] That course is impermissible under F.R.Civ.P. 56(e).

▮▮ Fourteen days after summary judgment had been entered appellant presented an affidavit presenting a theory of malice. We need not consider whether the affidavit would have been adequate to stave off summary judgment if it had been timely presented. We decline to find any abuse of discretion in the refusal of the trial court, in an action of this sort,[10] to reopen the action at that time.

Affirmed.

---

8. The court canceled the depositions of numerous officials of the Star noticed by plaintiff. On argument defendant-appellee tells us the reason was that the depositions were oppressively scheduled. In another case the nature of the limitation on discovery may warrant attention. Here it suffices to note that plaintiff had not pursued discovery on interrogatories specifically left available; had noticed the case as ready for trial, which under local practice signifies the end of discovery unless specifically authorized; and had not sought leave for additional discovery.

9. Plaintiff relied on the allegations of the amended complaint and generally incorporated his deposition, without reference to any portion thereof as setting forth facts showing a genuine issue of malice.

10. See Washington Post Co. v. Keogh, supra note 5.