241 So.2d 139 (1970)
David L. PERKINS
v.
MISSISSIPPI PUBLISHERS CORPORATION.
No. 45958.
Supreme Court of Mississippi.
November 16, 1970.
Rehearing Denied December 7, 1970.
Bowling, Coleman & Cothren, Jackson, for appellant.
Butler, Snow, O'Mara, Stevens & Cannada, Roger C. Landrum, W. Scott Welch, III, Jackson, for appellee.
SMITH, Justice.
David L. Perkins has appealed from an adverse judgment entered in a libel action brought by him in the Circuit Court of the First Judicial District of Hinds County against Mississippi Publishers Corporation, a Mississippi Corporation, as owner and publisher of two daily newspapers, The Clarion Ledger and The Jackson Daily News.
The substance of Perkins' complaint, as reflected by the declaration, was that, for a "long period of time," he had been actively engaged in politics in Mississippi, and as a result was "widely known in the State of Mississippi" and enjoyed a good reputation among those who knew him because of his political and "community and civic" activities. It was alleged that following the arrest of a certain Joe Daniel Hawkins on a charge of bank robbery by the Federal Bureau of Investigation on or about July 12, 1968, and during the course of the "arrest and subsequent investigation," the Federal Bureau of Investigation had collected a large number of weapons, dynamite "and other undesirable and obnoxious instrumentalities and appliances that normally would be used for violence and in the breaking of laws and in the harassment and intimidation of people." Plaintiff averred that Hawkins was charged "with other reprehensible activities," as well as robbery as set out in articles published in appellee's newspapers. It was alleged that appellant Perkins was not "connected with" Hawkins nor with his activities nor with the said *140 "appliances and instrumentalities of violence taken from him," and that this was known to appellee.
The declaration charged further that appellee caused a photograph to be made of the weapons and other articles taken from Hawkins upon his arrest, that among these was a large political poster which Perkins had distribtued in the "area" in his most recent political campaign (a race for a seat in Congress) on which there appeared a picture of Perkins with Rocky Marciano, a former heavyweight boxing champion, and which solicited votes for Perkins.
It was set out in the declaration that "in some way during the course of said (Perkins') political campaign" the poster evidently had come into the possession of Hawkins or some member of the Hawkins' family and thus had been found among the "appliances and instrumentalities of hate and violence" taken from Hawkins upon his arrest.
Appellant averred that appellee "caused" said political poster to be included in the photograph with a hangman's noose hanging over it, and that this photograph was published by appellee in its newspapers on July 12, 1968, in connection with a news article regarding the arrest of Hawkins, and that appellee did so with the "intention of associating the said photograph with the said violence and obnoxious activities of Hawkins, including the charge against Hawkins of bank robbery and other activities involving moral turpitude."
Appellant charged that publication of the photograph of this poster, containing his picture (and that of Marciano) with other items taken from Hawkins' car on his arrest, had caused him irreparable harm and damage as well as humiliation, embarrassment and harrassment and had destroyed any "future political chances or ambitions" that he might have had and demanded damages of appellee.
At the conclusion of appellant's case, a motion was made that the evidence be excluded and that the jury be directed to return a verdict for appellee. This was denied. When both sides had closed, appellee moved for a directed verdict in its favor. This motion was overruled and the issues were submitted to the jury which was unable to agree upon a verdict. Appellee then moved for judgment notwithstanding the mistrial and this motion was sustained by the court. It is from the final judgment then entered that Perkins has appealed.
No question is raised as to procedure, which in substance and effect, amounted to a renewal of appellee's motion for a directed verdict. Floyd v. Lusk, 190 So.2d 451 (Miss. 1966); Palmer v. Gardner, 226 Miss. 123, 83 So.2d 800 (1955).
The inquiry on appeal, therefore, must be addressed to the sufficiency of the evidence, viewed most favorably to appellant, to create a factual issue for the jury as to whether or not publication of the photograph by appellee was an actionable libel of Perkins for which he is entitled to recover damages.
There is little dispute as to any of the material facts. There is no dispute as to the circumstances which preceded and gave rise to the publication which forms the basis of appellant's complaint.
On July 11, 1968, the Federal Bureau of Investigation had taken into custody a certain Joe Daniel Hawkins on a federal warrant issued for his arrest upon a charge of having robbed a bank in Memphis, Tennessee. In the automobile which Hawkins was driving the federal officers found a number of items, among which were several firearms, of various types, ammunition, posters announcing meetings of the Ku Klux Klan, hangman's nooses, and one or more of appellant's political posters, which had been printed and distributed by him in his most recent political campaign. On the posters was a picture of appellant and former heavyweight boxing champion, Rocky Marciano, and a solicitation of votes for Perkins.
*141 It had been for sometime the policy of the local office of the Federal Bureau of Investigation to give publicity to the apprehension of criminals, especially when arrested in connection with a major crime of wide public interest. The not unreasonable theory behind the policy was that publication of the fact that the criminal had been caught would serve as a deterrent to crime. Upon the arrest of Hawkins, the Federal Bureau of Investigation notified the various news media of the fact and informed them that the weapons and other articles taken from Hawkins' car were available for photographing at the bureau office.
Several news services and representatives of local television stations availed themselves of the invitation to photograph these articles. When the photographers arrived they found that all of the weapons and other paraphernalia taken from Hawkins on his arrest had been arranged and were displayed on a table by the Federal Bureau of Investigation. No permission was given representatives of the press to make changes and none were made. The photographs then taken showed among them Perkins' political poster containing the picture of Perkins and Marciano and the leg-end "Vote for Perkins." These photographs were telecast that evening by local television stations, with which appellee had nothing to do. The next day a copy of this photograph appeared in appellee's newspapers with a news story dealing with the arrest and activities of Joe Daniel Hawkins. Perkins is not mentioned in the article.
Under the published photograph there appeared "Hawkins arsenal  weapons and ammunition seized from the automobile of Joe Daniel Hawkins here Thursday night is displayed  photograph by Jimmy Carman." In one issue, the article on Hawkins also was accompanied by a small photograph of Hawkins purporting to show him in the regalia of the Ku Klux Klan.
It is clear, therefore, that no charge, either true or false, actually was levelled at appellant by appellee's papers, unless it may be fairly said to have been logically implicit in the circumstances. Also, it is beyond question that the matter published (that one of appellant's political posters was among the items found in Hawkins' car) was factually true in every respect.
In recent years decisions of courts throughout this country and particularly decisions of the United States Supreme Court have wrought substantial changes in the law of libel. This Court has recognized these changes in at least two cases. Pride v. Quitman County Voters League, 226 So.2d 735 (Miss. 1969) and Reaves v. Foster, 200 So.2d 453 (Miss. 1967).
A different rule has been applied when the publication has dealt with a public official or with a public figure from that which is to be applied in the case of a private individual. The court below held that Perkins, when the photograph was published, was a public figure. Appellant contends that this was error and that Perkins was not at that time a public figure within the meaning of the rule.
It was, however, uncontradicted that Perkins had been prominently engaged in Mississippi politics for a good many years and had been a candidate and had conducted political campaigns for the following public offices: 1949  State Senate; 1951  State Senate; 1952  U.S. House of Representatives; 1953  City Commissioner; 1963  Lieutenant Governor; 1967  State Land Commissioner; 1968  U.S. House of Representatives. Perkins' campaign for this latter office had been concluded only four or five weeks prior to the discovery of one of his political posters in Hawkins' automobile and publication of the photograph. The poster found in Hawkins' car was one of several hundred printed and distributed by Perkins in his 1968 Congressional race. We are forced to conclude that Perkins was, at the time of the publication of the photograph a "public figure" as defined in the decisions of this Court and those of the United States Supreme Court, notwithstanding the fact that his latest political campaign ended *142 several weeks earlier. The words "public figure" have been held to include a police officer, Pride v. Quitman County Voters League, 226 So.2d 735 (Miss. 1969); a school principal, Reaves v. Foster, 200 So.2d 453 (Miss. 1967); the chairman of a campaign committee (although the publication was after the date of the election in question), Thompson v. Evening Star Newspaper Company, 129 U.S.App.D.C. 299, 394 F.2d 774 (1968); a baseball player, Cepeda v. Cowles Magazines and Broadcasting, Inc., 392 F.2d 417 (9th Cir., 1968); a presidential candidate, Goldwater v. Ginzburg, 414 F.2d 324 (2nd Cir., 1969), cert. den. 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695, pet. reh. den. 397 U.S. 978, 90 S.Ct. 1085, 25 L.Ed.2d 274 (1970); a deputy sheriff, St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); former public official, Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); an attorney, Ragano v. Time, Inc., 302 F. Supp. 1005 (M.D.Fla., 1969); a political candidate a short time after the campaign was over, Sas Jaworsky v. Padfield, 211 So.2d 122 (La. 1968); a prominent attorney, Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579 (5th Cir., 1967).
The fact that Perkins himself considered that he was a public figure finds support in the averments of fact contained in his declaration. "* * * [F]or a long period of time prior to the incidents related herein, he (Perkins) has been actively engaged in political activities in the State of Mississippi * * * that because of Plaintiff's political activities, he is widely known in the State of Mississippi." We think the record can support no other reasonable conclusion than that Perkins was a public figure within the meaning of the rule.
Since Perkins was a public figure, it was necessary, in order to recover, that it be shown not only that the published matter was false and defamatory but also there must be proved "either actual malice or reckless disregard of the truth." Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, reh. den., 389 U.S. 889, 88 S.Ct. 11, 13, 19 L.Ed.2d 197 (1967); Goldwater v. Ginzburg, supra; New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Reaves v. Foster, supra; St. Amant v. Thompson, supra.
It will have been noted that it is not charged in the declaration that the publication of the photograph was actuated by malice. The gravamen of the complaint is that appellee published the photograph although appellee "* * * knew that (Perkins) was in no manner connected with said person (Hawkins) and was in no manner connected with the investigation of any charges against said person or any personal activities of said person and was in no manner connected with said appliances and instrumentalities of violence secured from the said Joe Daniel Hawkins either before or after his said arrest." Further, that the photograph was published "* * * with the obvious intention of associating the said photograph with the said violence and obnoxious activities of the said Joe Daniel Hawkins, including the charge against him of bank robbery and other crimes and activities involving moral turpitude."
The single appearance in appellee's newspapers of a reference to Perkins is that reflected by his political poster "Vote for Perkins." No mention of his name is made in any of the articles about Hawkins. Appellant's position is, in essence, that the publication of the photograph of his political poster among other items also taken from Hawkins' automobile was reasonably calculated to create in the minds of readers of the paper, of normal intelligence, the logical conclusion that Perkins was connected with the robbery of the bank by Hawkins and with his "other crimes and activities involving moral turpitude," and that this assumption or inference was false.
The published photograph of the weapons and miscellaneous paraphernalia found in Hawkins' car did no more nor less than reflect the fact that one of Perkins' political posters, of which hundreds had been printed and distributed, had been among them. *143 We cannot accept as logical or reasonable the view urged upon us by appellant that there was implicit in this fact a charge that Perkins was personally connected or associated with Hawkins in his criminal or immoral activities. Nothing is less private nor more impersonal than a political poster. It would border upon the absurd to suggest that political posters or other items of political "literature" will not find their way into the hands of "all sorts and conditions" of men, without that fact giving rise to any implication whatever that the candidate was "connected" or involved in their activities.
The arrest of Hawkins was "hot news" and in itself was a matter of wide public interest. The distribution of the political posters was within the realm of Perkins' activities as a public figure. The testimony was that appellee's responsible agents had not known whether Perkins was or was not connected with Hawkins or with the Ku Klux Klan or with the Association for the Preservation of the White Race. Perkins testified that he was not. He said, however, that he had been, in fact, personally acquainted with Hawkins, having been introduced to him by his campaign manager. He also knew Hawkins' parents who had attended his political meetings with him. He suggested that Hawkins or Hawkins' parents had obtained the poster, in all probability, from his campaign headquarters or from his manager. It was shown without dispute that Hawkins and Perkins' campaign manager were well acquainted with each other. In fact, it was shown that throughout Hawkins' trial in Memphis upon the bank robbery charge, Perkins' manager had sat with Hawkins' family in the courtroom and had conferred with Hawkins during the various intermissions and breaks in the trial. In the light of all of this, it cannot be said that the photograph reflecting Hawkins' possession of the poster constituted a sinister indictment of Perkins or implied a charge, known to be false or made with reckless disregard of the truth, that Perkins was connected with Hawkins in robbing the bank or with any of Hawkins' other activities involving moral turpitude. Such an implication is too tenuous and does not naturally or logically follow from the premises.
Neither malice nor reckless indifference to or disregard of the truth was established in connection with the publication of the photograph in appellee's newspapers. The trial judge correctly decided that there was no factual issue for determination by a jury.
The judgment of the circuit court was correct and must be affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY and PATTERSON, JJ., concur.