**SOUND SHIP BUILDING CORP, a New York Corporation, Appellant,**

v.

**BETHLEHEM STEEL COMPANY (IN-CORPORATED), a Pennsylvania Corporation and Bethlehem Steel Corporation, a Delaware Corporation.**

No. 75–1337.

United States Court of Appeals, Third Circuit.

Argued Nov. 21, 1975.

Decided Jan. 16, 1976.

Rehearing Denied April, 23, 1976.

As Amended June 3, 1976.

Hannoch, Weisman, Stern & Besser, Albert G. Besser, Newark, N. J., for appellant; Charles H. Cottingham, Newark, N. J., of counsel.

Riker, Danzig, Scherer & Debevoise, Newark, N. J., for appellees; Dickinson R. Debevoise, Newark, N. J., C. H. Barnette, David M. Beckwith, E. C. Perkins, Bethlehem, Pa., of counsel.

Before VAN DUSEN, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal by Sound Ship Building Corporation (Sound Ship) from the district court's ruling that Bethlehem Steel Corporation (Bethlehem) did not violate section 1 of the Sherman Act by including a restrictive covenant in the deed of sale transferring certain land to the JML Trading Company (JML). We affirm the judgment, although on a ground different from that relied on by the district court.

### I.

Sound Ship is a corporation that engaged in the construction and repair of non-self-propelled barges in the New York harbor area. During the 1950's and 1960's, it conducted its business at a site in the College Point section of Queens, New York. The land and facilities were used by Sound Ship under the terms of a lease that expired in September 1971.

When it was informed by its landlord that the lease would not be renewed, Sound Ship sought a new location for its operations. In the course of its search, Sound Ship examined over forty parcels of land in the New York region. The one that it found most suitable was part of a tract known as Mariner's Harbor Industrial Park, on Staten Island. This site had sufficient pier space, water depth, and launching ways for Sound Ship's construction business.

The Mariner's Harbor property was owned by JML. It had previously been one of four shipyards operated by Bethlehem in the New York area. Bethlehem had sold it and two of the other three shipyards during the 1960's in the face of a decline in the region's ship-building market. In each of the three sales, Bethlehem had included a deed restriction that prohibited the use of the location for the construction or repair of ships for a specified period of time. The sale of the Mariner's Harbor property to JML took place in 1964, and the restriction in the deed of sale was to be effective for twenty years.

JML was willing to rent its Mariner's Harbor site to Sound Ship, but the covenant restricting the business permitted there rendered the property of limited value for Sound Ship's purposes. Because it found the site so attractive, Sound Ship attempted to obtain a release of the covenant from Bethlehem. At first, Bethlehem refused to grant the release, but it later expressed a willingness to lift all restrictions for a price of $250,000, to be paid over the remaining thirteen years that the covenant would otherwise have been effective. When this figure was combined with the rental fees that JML would have charged, Sound Ship would have had to pay just over $45,000 annually for the property. Sound Ship decided not to take the property, and the only reason set forth for its declination is that one of Sound's principals became angry at the prospect of paying $250,000 to a competitor.

Subsequent to January 1972, Sound Ship leased a property in Hoboken, New Jersey. The Hoboken site, however, presented Sound Ship with several difficulties. In particular it did not have sufficient launch-

ing ways for construction of new vessels; the water was too shallow for use of Sound Ship's floating drydock; and heavy tugboat traffic and a severe tidal rip made the performance of repair work in the water rather difficult. Despite these problems, the annual rental that Sound Ship agreed to pay for the Hoboken location was $56,000—almost $11,000 more than Sound Ship would have had to pay for the Mariner's Harbor property. An additional $33,250 had to be expended every year at Hoboken for watchman and security services, which would have been provided free of charge by the landlord at Mariner's Harbor, and for dredging, which would not have been necessary at Mariner's Harbor. As Sound Ship concisely states in its brief, the Hoboken property "not only was considerably more costly in terms of rent and other operating expenses, but also was far less suited to Sound Ship's business."

Some time after leasing the Hoboken property, Sound Ship's financial condition deteriorated, and the company ultimately went out of business. Sound Ship filed suit against Bethlehem in January 1973. It alleged in its complaint that the inclusion of the restrictive covenant in the deed of sale and Bethlehem's refusal to waive the restrictions without payment of a fee violated sections 1 and 2 of the Sherman Act.[1] The Count of the complaint based upon section 2 was later voluntarily dropped by Sound Ship.

Each party moved for summary judgment. Based on the pleadings, affidavits, answers to interrogatories, and depositions, the district court entered judgment in favor of Bethlehem. The trial judge held that the covenant was merely ancillary to a lawful primary contract, and was therefore not violative of section 1 of the Sherman Act. Principal reliance was placed by the district court upon *United States v. Addyston Pipe & Steel Co.*[2] and its progeny.

## II.

■ Because Sound Ship has failed to develop a theory or to set out any facts in the depositions and other documents that have been filed which would show a causal link between Bethlehem's acts and Sound's losses, the judgment of the district court must be affirmed. This disposition of the case makes it unnecessary to address the ancillary restraints doctrine, which formed the basis of the district's court's opinion.

The requirement that an antitrust plaintiff demonstrate that the alleged illegal acts were the cause of its damages is well established. Section 4 of the Clayton Act, the statute vesting jurisdiction over antitrust suits in the federal courts, allows recovery only to a plaintiff who is injured "by reason of" a violation of the antitrust laws.[3] As early as 1913, the Supreme Court recognized the necessity of a plaintiff's establishing a causal connection between the defendant's acts and the plaintiff's injury,[4] and that rule has been reaffirmed through the years.[5]

Even if a defendant's acts are shown to be violative of the statute, therefore, a plaintiff may not recover unless a nexus to its own injury is also demonstrated. This Court has only recently ruled that in order to recover, a plaintiff "must prove that the violation [of the antitrust laws] was a mate-

---

1. 15 U.S.C. §§ 1, 2 (1970). Section 1 provides in part: "Every contract, combination . ., or conspiracy, in restraint of trade or commerce among the several States, . . . is declared to be illegal. . . .." Section 2 provides in part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, . . . shall be deemed guilty of a misdemeanor . . . .."

2. 85 F. 271 (6th Cir. 1898), *aff'd*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

3. 15 U.S.C. § 15 (1970).

4. *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 24–25, 33 S.Ct. 202, 57 L.Ed. 393 (1913).

5. *See, e. g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

rial cause of some injury to his business or property."[6]

Sound Ship has failed to develop the requisite causal connection in this case. It has neither averred nor in any way suggested that the price for waterfront land utilizable as a shipyard generally, or for the Hoboken site in particular, was affected in any manner by Bethlehem's restrictive covenant. There is nothing in the record that indicates that Bethlehem compelled or in any fashion induced Sound Ship to lease the site in Hoboken, and it has not been intimated that Bethlehem affected the rental rate charged for that property. In fact, Sound Ship could have chosen to lease the Mariner's Harbor site from JML, and to pay Bethlehem to release the covenant that restricted the uses allowed on that property, for a combined annual cost approximately one-half as high as the amount it was obligated to pay for the Hoboken property. Based on the record, it can only be concluded that Sound Ship's losses were not caused by action on the part of Bethlehem.[7]

### III.

Sound Ship alleged in its complaint that Bethlehem's acts had directly caused Sound Ship's damages. Under the rule that once prevailed in this Court, that allegation alone may have been sufficient to put the factual issue in dispute and thereby to preclude summary judgment.[8]

However, Rule 56(e) of the Federal Rules of Civil Procedure was changed in 1963 to read that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." The Advisory Committee on Civil Rules recommended changing Rule 56(e) in response to this Court's interpretation, which had made pleadings alone sufficient to counter a well-supported motion for summary judgment. The Committee stated that the modification was made "to overcome a line of cases, chiefly in the Third Circuit, which had impaired the utility of the summary judgment device. . . . [When the party opposing the motion] rests on averments of his pleadings which on their face present an issue . . . Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well-pleaded,' and not suppositious, conclusory, or ultimate."[9]

Following the guidance provided by the amended language, the Supreme Court has held that Rule 56(e) makes clear "that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."[10]

6.   *Rea v. Ford Motor Co.,* 497 F.2d 577, 589 (3d Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974). *Accord, Pitchford v. PEPI, Inc.,* 531 F.2d 92 (3d Cir. 1975).

7.   If, on the other hand, Sound Ship had leased the Mariner's Harbor property and paid Bethlehem to release the covenant, it conceivably could have shown that the acts by Bethlehem which it claims are illegal had caused it damage. That situation, however, is not before us.

8.   *See, e. g., United States v. Various Articles of Drugs,* 314 F.2d 850, 852 (3d Cir. 1963); *Lawlor v. National Screen Service Corp.,* 238 F.2d 59, 65 (3d Cir. 1956), *vacated per curiam on other grounds,* 352 U.S. 992, 77 S.Ct. 526, 1 L.Ed.2d 540 (1957); *F.A.R. Liquidating Corp. v. Brownell,* 209 F.2d 375, 379 (3d Cir. 1954); *Frederick Hart & Co. v. Recordgraph Corp.,* 169 F.2d 580, 581 (3d Cir. 1948).

9.   Judicial Conference of the United States, Report of Proposed Amendments to Certain Rules of Civil Procedure for the United States District Courts, 31 F.R.D. 621, 648 (1962). *See also Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 159 n. 20, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); 6 J. Moore, Federal Practice ¶ 56.22[2], at 2821–22 (3d ed. 1975). This Court has previously recognized the doctrinal changes effected by the 1963 amendment to the Rule. *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *Robin Constr. Co. v. United States,* 345 F.2d 610, 613–15 (3d Cir. 1965).

10.   *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) (footnote omitted).

Sound Ship argues that five findings of fact made by the district court are disputed, and that those findings are thus inappropriate in the summary judgment context presented here. However, all five factual issues concern the doctrine of ancillary restraints. Because our disposition of the case makes it unnecessary to discuss the applicability of that doctrine, the five factual matters, disputed or not, are immaterial to our decision. Reversal is therefore not merited, since summary judgment is improper only when there are disputed *material* facts. *Teamsters Local 249 v. Bill's Trucking, Inc.*, 493 F.2d 956, 964 (3d Cir. 1974); *Kiess v. Eason*, 442 F.2d 712, 713 (7th Cir. 1971).[11]

The mere presence in the complaint of the allegation that Bethlehem caused Sound Ship's damages is no longer sufficient by itself for Sound Ship to avoid summary judgment. Because Sound Ship has failed to show, by affidavit or otherwise, that the required causal link exists between the alleged antitrust transgression and damage to Sound Ship, and because there are no disputed material facts, summary judgment was an appropriate method for disposing of the case.

### IV.

The judgment of the district court accordingly will be affirmed.

### MEMORANDUM SUR PETITION FOR REHEARING BEFORE THE PANEL

#### PER CURIAM:

After the filing of the opinion in this matter, a petition for rehearing before the

panel was presented. In it, Sound Ship took issue with several of the factual assumptions underlying the opinion, emphasizing that the appeal was from a summary judgment entered by the district court, and that the presence of material factual issues mandated reversal. It further stated in its petition that the point that we deemed dispositive of the appeal—Sound Ship's failure to set out any facts showing a causal nexus between Bethlehem's acts and Sound's losses—had not been adequately briefed. The reasons asserted for the inadequacy were that the issue of causation had neither been raised in the district court nor urged in this Court by Bethlehem as a ground for affirmance.

We granted permission to Sound Ship to file a brief in support of its petition for rehearing and to Bethlehem to file a brief in opposition. The parties were specifically requested to address the question whether there is anything in the record sufficient to show a causal relationship between the restrictive covenant imposed by Bethlehem and the losses allegedly suffered by Sound Ship.[1]

Sound Ship maintains that we neglected in our opinion to account for a critical portion of the record. That portion of the record, it is claimed, presents evidence that Bethlehem offered to remove the covenant from the Mariner's Harbor property only if Sound Ship would pay the full $250,000 waiver fee immediately. The requirement that the full fee be paid "up front"—rather than over the remaining thirteen years of the life of the covenant, as we described it in our opinion—is alleged to provide the causal link that we found lacking between

---

11. The Supreme Court has advised that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles . . .." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *Accord, Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 939 (3d Cir.) (Freedman, J., dissenting), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970). However, that caveat was not meant to express a *per se* rule, *White Motor Co. v. United States*, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963), and the

approach we take in this case, which obviates the need to scrutinize the parties' motive and intent, makes it inapplicable here in any event.

1. We also stated in our order that the parties could present any further analysis of the ancillary restraints doctrine, the basis of the district court's decision, which they wished to bring to the attention of the Court.

Subsequent to the filing of Bethlehem's brief, Sound Ship submitted a reply memorandum, which we have also considered.

Bethlehem's acts and Sound's losses. It does so, the argument continues, because it makes incorrect our understanding that the record fails to demonstrate that the damages flowing from the choice of land ultimately made by Sound Ship were caused by Bethlehem. Since Sound Ship could not afford to pay $250,000 immediately, the argument goes, it had no choice but to rent the Hoboken site. Thus, Sound Ship contends, its losses were attributable to Bethlehem's refusal to release the Mariner's Harbor covenant for a reasonable price and on reasonable terms.

We have reread the record carefully, but do not find it to support the assertions made by Sound Ship in its petition for rehearing. The record nowhere contradicts the statement made in our opinion that Bethlehem offered "to lift all restrictions [on the Mariner's Harbor property] for a price of $250,000, to be paid over the remaining thirteen years that the covenant would otherwise have been effective."[2] Nor do we find any factual material set forth in the depositions or other documents in the record indicating that the price of the Hoboken property or of waterfront land utilizable as a shipyard generally was affected by the restrictive covenant, or that Bethlehem in any way induced Sound Ship to lease the site in Hoboken. Rather, our review reveals the same factual pattern we noted originally, and it leads us to the same result: Sound Ship did not articulate in the depositions and other documents any causal nexus between Bethlehem's acts and Sound's losses.

Sound Ship has also suggested that we were incorrect in concluding in our opinion that the victim of a restrictive covenant must pay for the cancellation of such covenant in order to have a cause of action under the antitrust laws. That rule was neither embraced nor implied in our opinion. We held merely that an antitrust plaintiff, in a factual situation such as we have here, fails to show the requisite causal link when it has an option of renting property (the Mariner's Harbor site) whose price has arguably been affected by the acts of the defendant, but instead chooses to lease property (the Hoboken site) that is less suitable to its needs and costs more, so long as the rental rate for the property actually leased has not been affected by the defendant.[3]

The petition for rehearing before the panel will be denied.

**2.** At 97. The brief filed by Sound Ship in support of its petition for rehearing contains several statements that are not supported by those portions of the record to which reference is made. Some of these references relate to factual matters that are critical to the outcome of the question the parties were asked to brief.

**3.** Sound Ship attached to its petition for rehearing an affidavit by a real estate broker expressing his opinion that the effective removal of the Mariner's Harbor site from the market, which allegedly resulted from the enforcement of the covenant by Bethlehem, increased the prices that landlords of available sites could charge. In its brief, Sound implied that the affidavit creates a material factual issue, precluding summary judgment. Because of the untimeliness of its filing, and the fact that permission for such filing was neither sought nor granted, the affidavit may not be considered. The presence or absence of genuine issues of material fact is to be gauged as of the time judgment was entered by the district court. *City Electric, Inc. v. Electrical Workers Local 77,* 517 F.2d 616, 617 (9th Cir. 1975), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127, (1975); *Garcia v. American Marine Corp.,* 432 F.2d 6, 8 (5th Cir. 1970); *Thompson v. Evening Star Newspaper Co.,* 129 U.S.App.D.C. 299, 394 F.2d 774, 777, *cert. denied,* 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968); *Clarke v. Montgomery Ward & Co.,* 298 F.2d 346, 349 (4th Cir. 1962); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716, at 435–36 (1973). *Cf. Street v. Surdyka,* 492 F.2d 368, 374 (4th Cir. 1974); *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 94–95 (2d Cir. 1970). In any event, the extensive depositions taken in this case in no way indicate that the owner of the Hoboken site even knew of the restrictive covenant covering the Mariner's Harbor site when it leased the property to Sound Ship.