George B. LOGAN, aka George B. Jackson, Plaintiff,

v.

DISTRICT OF COLUMBIA et al., Defendants.

Civ. A. No. 77–466.

United States District Court, District of Columbia.

March 27, 1978.

T. Paul Imse, Jr., E. William Tupling, Charlton, Imse & Tupling, Washington, D. C., for plaintiff.

Michael E. Zielinski, Asst. Corp. Counsel, Washington, D. C., for defendants District of Columbia, Albert P. Russo and Dr. Fred R. West.

John B. Kuhns and Kevin T. Baine, Williams & Connolly, Washington, D. C., for defendants Washington Post and Leon Dash.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

This matter comes before the court on defendants' motions for summary judgment. This is an action to recover damages for, *inter alia*, defamation and invasion of privacy. There are two sets of defendants in this case: (1) *The Washington Post Company* and one of the *Post's* reporters—Leon D. Dash, Jr.; and (2) the District of Columbia, Dr. Fred R. West, Administrator of the Narcotics Treatment Administration (NTA), and Albert P. Russo, Acting Director of the Department of Human Resources.

The plaintiff, George B. Logan, aka George B. Jackson, was arrested by Metropolitan Police in the aftermath of an undercover fencing operation which has become commonly known as "the Sting". Logan bases his causes of actions on articles appearing in the *Washington Post* on March 17 and 18, 1976. Logan received particular attention in those articles because he had applied to be a "hit man" for the undercover operation and because he allegedly confessed to a murder in order to impress the undercover agents who were posing as members of the Mafia.

On March 16, 1976 Dr. West was interviewed by Dash, the *Post* reporter, concerning the use of illicit drugs by persons who had been arrested in connection with the Sting. On March 17, 1976, the *Post* published an article written by Dash which reported that "of the 62 (defendants tested) 24 or 39 percent of them had heroin (in their urine samples), methadone, cocaine or admitted to the use of drugs." The article stated that "fourteen of the drug users were active or inactive NTA patients". The article also reported that George Logan "was one of the eight of the agency's pa-

tients who were inactive in the program and showed positive use of drugs in his urine sample". The information reported about Logan's drug use and status with the NTA was based on Dash's interview of Dr. West.

After the article was published, Dr. West advised Dash that Logan's urine sample had not in fact tested positively as to drug use. On March 18, 1976 the *Post* published a "correction" stating that Logan "was incorrectly listed as among a group of 24 illicit drug users." The correction went on to report that Dr. West had confirmed, however, that Logan was an inactive NTA patient.

Based on the March 17 article and the March 18 correction Logan has sued the *Post* and Dash for libel and invasion of privacy and he also asserts claims against the District of Columbia, Russo and Dr. West for violation of the confidentiality provisions of the Drug Abuse Office and Treatment Act of 1972, 21 U.S.C. § 1175, violation of the confidentiality of the physician-patient relationship, defamation and invasion of privacy.

### I. *Claims against the Post and Dash.*

The *Washington Post* and Dash move for summary judgment on all of the claims against them asserting: (1) that the articles are not actionable in libel and (2) that the articles did not invade the plaintiff's privacy. As to the libel claims, the *Post* and Dash contend that the allegedly defamatory statements were substantially true, the plaintiff cannot show that the articles caused any injury to his reputation, and that the plaintiff cannot prove that the articles were published with actual malice.

■ Before pressing their substantive assertions, the *Post* and Dash initially contend that summary judgment is favored in libel and invasion of privacy cases. They correctly assert that the court should closely scrutinize the evidence to determine whether summary judgment should be granted

because of the chilling effect of this case on their First Amendment rights. *See Guam Federation of Teachers, Local 1581 v. Ysrael,* 492 F.2d 438, 441 (9th Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974); *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965, 968 (1966), *accord, Gospel Spreading Church v. Johnson Publishing Co.,* 147 U.S.App.D.C. 207, 454 F.2d 1050, 1051 (1971); *Thompson v. Evening Star Newspaper Co.,* 129 U.S.App.D.C. 299, 394 F.2d 774, 776 (1968).

### A. *The Libel Claims.*

As to the libel claims, the court need not reach the issue of whether the articles were substantially true because it is clear that the plaintiff cannot show that the articles were published with actual malice as required by *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It is also apparent that the plaintiff cannot demonstrate that the articles caused any injury to his reputation.

In *New York Times Co.,* the Supreme Court held that the First Amendment:

> [R]equire[s] we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. at 279–80, 84 S.Ct. at 726. This prohibition was extended to preclude recovery by a "public figure" unless actual malice is shown. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 336–37, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 162–65, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (Warren, C. J., concurring); *Thompson v. Evening Star Newspaper Co.,* 129 U.S.App.D.C. 299, 394 F.2d 774, 775–76 (1968). The question then becomes whether the plaintiff in this case is a public figure. The determination as to whether the plaintiff is a public figure is to

be made by the court, not a jury. *See Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Hoffman v. Washington Post Co.,* 433 F.Supp. 600, 604 (D.D.C.1977); *Hotchner v. Castello-Puche,* 404 F.Supp. 1041, 1045 (S.D.N.Y.1975), *rev'd on other grounds,* 551 F.2d 910 (2nd Cir. 1977).

In discussing public figures, the Supreme Court in *Gertz* stated:

> In some instances, an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.

418 U.S. at 351, 94 S.Ct. at 3013. In this case, Logan voluntarily injected himself into the Sting controversy and thereby became a public figure. The plaintiff freely entered into the police operation known as the Sting and clearly made himself a public figure by attempting to become a "hit man" and claiming to have been responsible for a murder. Even if all criminal defendants are not public figures for the purpose of a defamation action, *see Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 966–67, 47 L.Ed.2d 154 (1976), Logan certainly is, because he is not the typical criminal defendant. Besides being arrested in connection with a large police fencing operation, Logan gained additional notoriety through his assertions in attempting to secure a "job". Therefore, Logan must establish actual malice by clear and convincing evidence. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 50–52, 91 S.Ct. 1811, 29 L.Ed.2d 276 (1971); *New York Times Co. v. Sullivan,* 376 U.S. 254, 285–86, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1964); *Hoffman v. Washington Post Co.,* 433 F.Supp. 600, 604–05 (D.D.C.1977).

Proof of actual malice requires that the plaintiff show, by clear and convincing

evidence, knowledge of the falsehood or reckless disregard for the truth. A showing of reckless disregard requires more than proof of negligence, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). Plaintiff concedes that for the purposes of defendants' motion for summary judgment it should be assumed that Dr. West informed Dash that the plaintiff was an inactive NTA patient and that his urine sample tested positive at the time of the arrest. Plaintiff's Statement of Genuine Issues; Plaintiff's Opposition at 8–9. Thus, Dash and the *Post* justifiably relied on Dr. West's statements. Even if Dr. West, did not state that the plaintiff's urine sample indicated drug usage, Logan has not asserted that the story was published with actual malice. In this regard the plaintiff only has asserted that he was not a public figure, an assertion which will be rejected. The plaintiff has not made the required showing of facts "from which malice may be inferred." *Thompson v. Evening Star Newspaper Co., supra*, 129 U.S.App.D.C. 299 [at 301] 394 F.2d at 776. Both Dash and the *Post* have asserted that the article was published in the good faith belief that it was true. Moreover, the correction published the next day by the *Post* "is significant and tends to negate any inference of actual malice." *Hoffman v. Washington Post Co.*, 433 F.Supp. 600, 605 (D.D.C.1977). Therefore, defendants' motion for summary judgment will be granted because the plaintiff cannot and has not shown that the articles were published with actual malice.

■ The court will also grant the defendants' motion for summary judgment as to the libel claims because the plaintiff cannot demonstrate that the articles caused any injury to his reputation. Defendants assert that the plaintiff is unable, as a matter of law, to prove any injury to his reputation by publication of the articles in question "in view of his long history of drug use, his extensive past criminal record which includ-ed drug offenses, his participation and conviction for offenses committed as participant in the fencing operation, and his own efforts to impress what he thought were members of the Mafia by confessing to a murder . . ." Defendants' Motion for Summary Judgment at 11; *see Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638 (2d Cir. 1975). The plaintiff in the present case is an admitted drug user and his use of drugs was publicized in a book about the Sting. Affidavit of Ronald Shaffer, ¶ 3 and Exhibits A&B; R. Shaffer & K. Klose, *Surprise! Surprise! How the Lawmen Conned the Thieves*, 174–75 (1977). The plaintiff had a federal narcotics violation conviction in 1958, was charged with a federal narcotics violation in 1966 and committed under the Narcotics Addicts Rehabilitation Act Program, had an unlawful entry conviction in 1974, and is presently serving a sentence of 2–8 years for a federal firearms conviction. Furthermore, the plaintiff attempted to become a "hit man" for the Sting operation and told the undercover officers that he had committed a murder. Thus, it is highly unlikely that if the plaintiff was to somehow prevail on the legal issues he would be able to recover damages and, therefore, he will be found "libel-proof" as a matter of law. *See Cardillo v. Doubleday & Co., Inc., supra*, 518 F.2d at 639–40. Thus, Dash's and the *Post's* motion for summary judgment on the plaintiff's libel claims will be granted on this ground also.

B. *Plaintiff's Invasion of Privacy Claims.*

■ Defendants assert that the plaintiff cannot recover for invasion of privacy because: (1) the articles were substantially true and disclosed public facts; *see Elmhurst v. Pearson*, 80 U.S.App.D.C. 372, 153 F.2d 467, 468 (1946); Restatement of Torts, 2d § 652 (1977); and (2) to the extent the articles were erroneous they were not published with actual malice. The part of the articles dealing with the plaintiff's drug usage and status as a NTA patient were

publications of facts of public interest, once disclosed, and substantially true as was indicated by the discussion concerning the plaintiff being libel-proof. The plaintiff is an admitted drug user and has been convicted for violations of federal narcotics laws. Furthermore, it is clear that plaintiff's use of drugs and status as a NTA patient were of public interest and not private facts. As the Restatement of Torts, 2d, states:

> There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. They have, in other words, become "news." Those who commit crime or are accused of it may not only not seek publicity but may make every possible effort to avoid it, but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed . . . . These persons are regarded as properly subject to the public interest, and publishers are permitted to satisfy the curiosity of the public as to its heroes, leaders, villains and victims, and those who are closely associated with them.

§ 652D, Comment f;

> Permissible publicity [of] information concerning either voluntary or involuntary public figures is not limited to the particular events that arouse the interest of the public. That interest, once aroused by the event, may legitimately extend, to some reasonable degree, to further information concerning the individual and to facts about him, which are not public and which, in the case of one who had not become a public figure, would be regarded as an invasion of his purely private life. Thus, the life history of one accused of murder, together with such heretofore private facts as may throw some light upon what kind of person he is, his possible guilt or innocence, or his reasons for committing the crime are a matter of legitimate public interest.

§ 652D, Comment h. The facts published were newsworthy and were reported out of a "legitimate journalistic effort". *Virgil v.*

*Sports Illustrated,* 424 F.Supp. 1286, 1289–90 (S.D.Cal.1976).

■ Another issue concerning the publication of the plaintiff's status as a participant in a NTA drug treatment program is plaintiff's invasion of privacy claim that relies on the confidentiality provisions of the Drug Abuse Office and Treatment Act of 1972, 21 U.S.C. § 1175. Clearly the prohibitions of that provision do not directly apply to the press. The plaintiff argues, however, that Congress established a national policy on privacy in the Act that supplants the judicial standards established to define the reasonableness of an intrusion or the public nature of facts regarding an individual's participation in a drug abuse prevention program. The provisions of § 1175, however, are aimed at the disclosure of information from official records by employees and officials of the programs and agencies. Section 1175(d) provides for fines for the violation of the confidentiality provisions. Furthermore, regardless of how compelling plaintiff's arguments may seem, the impact of a finding of an invasion of privacy must be weighed against the First Amendment rights of the press. There is no indication that the information was not freely disclosed by Dr. West or that illicit means were used to obtain the data. It also should be noted that Logan's status as a patient in the NTA program was made a part of the public record on March 1, 1976 and April 20, 1976 on a bail agency form and the form used to release him on personal recognizance while the Sting charges were pending. *United States v. Jackson,* Cr. No. 76–171 (April 20, 1976); *United States v. Jackson,* 76–320 M (March 1, 1976). Thus, if anyone should be liable for an invasion of privacy in this case, it should be the official who disclosed the confidential information to the *Post* and Dash.

■ Finally, plaintiff's invasion of privacy claims as to the erroneous report that his urine test indicated drug usage must be considered. On this claim plaintiff appears to assert that the article invaded his privacy by placing him in a false light. To recover

on such a theory, however, the plaintiff must demonstrate that the article was published with knowledge of its falsity or in reckless disregard of the truth—i. e. that it was published with actual malice. *Time, Inc. v. Hill*, 385 U.S. 374, 386–91, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *cf. Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 249–52, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). As was discussed earlier, the plaintiff in this case cannot show that the *Post* and Dash published the erroneous initial article with knowledge of its falsity or in reckless disregard of the truth. Therefore, the defendants will be granted summary judgment on all of plaintiff's invasion of privacy claims against the *Post* and Dash.

II. *Plaintiff's Claims Against Russo, Dr. West, and the District of Columbia.*

The plaintiff also asserts numerous claims against Russo, Dr. West, and the District of Columbia. Against this set of defendants the plaintiff asserts claims of violation of the confidentiality provisions of the Drug Abuse Office and Treatment Act of 1972, 21 U.S.C. § 1175, defamation, invasion of privacy, and violation of the confidentiality of the physician-patient relationship.

A. *The Drug Abuse Office and Treatment Act Claims.*

█ Plaintiff's attempt to base a cause of action on 21 U.S.C. § 1175 will be discussed first. Clearly the act does not specifically provide for a private damages action and the plaintiff requests that this court hold that such a cause of action is implied in the Act's provisions. The Supreme Court, in *Cort v. Ash*, outlined four factors to be considered in determining whether a private cause of action should be implied from a statute:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the

plaintiff? Second, is there any indication in the legislative intent, explicit or implicit, either to create such a remedy or deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). Assuming, *arguendo*, that the plaintiff satisfies the first three prerequisites, the major difficulty appears to be in creating a federal cause of action under the statute where the plaintiff has a remedy via a state law invasion of privacy claim. The right to privacy has traditionally been a matter of state concern and has been provided protection by the District of Columbia common law. *See Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 366 F.2d 649, 653 (1966) (en banc). Other courts have refused to imply a private cause of action based upon federal statutes and regulations where an adequate remedy already existed. *See Farmland Industries, Inc. v. Kansas-Nebraska Gas Co.*, 486 F.2d 315, 318 (8th Cir. 1973); *Holloway v. Bristol-Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986, 999–1000 (1973); *Doak v. Claxton, Georgia*, 390 F.Supp. 753, 758 (S.D.Ga.1975).

The plaintiff contends that because he may not be able to recover in an invasion of privacy action on the facts of this case, his argument for a federal cause of action gains additional strength. First, despite plaintiff's pessimistic view, it is not entirely clear that the plaintiff will be unable to recover under a common law invasion of privacy theory. Second, it is also not certain that the failure to imply a federal cause of action precludes any reliance of the confidentiality provisions of § 1175. Violation of any confidential relationship established under the Act may be actionable under a common law theory of invasion of privacy. Finally, the facts that may preclude the plaintiff from recovering against

these defendants on an invasion of privacy theory (i. e. plaintiff's admitted use of drugs and plaintiff's status as an NTA patient in the public record of a criminal case) may also preclude the plaintiff from recovering under a federal cause of action based on the Act. Thus, the absence of relief under the common law action does not necessarily require a finding that a federal cause of action should be implied to provide the plaintiff with relief. Therefore, defendants' motion for summary judgment on plaintiff's claims based on 21 U.S.C. § 1175 will be granted.

B. *Claims Based on the Physician-Patient Relationship.*

In counts III and IV of the complaint plaintiff seeks to recover from the District, Dr. West and Russo for violation of the confidentiality of the physician-patient relationship. The violation alleged is that Dr. West revealed information concerning the results of plaintiff's drug test and plaintiff's status as an NTA patient. The defendants move for summary judgment on the ground that: (1) no such cause of action exists in this jurisdiction; (2) if any action exists it is encompassed within the tort of invasion of privacy; (3) the allegations of the complaint do not state a cause of action even if such a cause of action exists; and (4) no physician-patient relationship existed between Dr. West and the plaintiff.

■ Although the District of Columbia Code, § 14–307, establishes the physician-patient privilege concerning evidentiary testimony, the plaintiff has not cited cases from this jurisdiction that have held that the privilege or the physician-patient relationship gives rise to a cause of action. Furthermore, Dr. West's statements to Dash did not violate the physician-patient privilege because they did not constitute in-court testimony. Plaintiff, instead, has asserted a cause of action based on the confidential physician-patient relationship. In support of this action, the plaintiff relies on "the argument made to support a cause of action for violation of the confidentiality provisions of the Drug Abuse Office and Treatment Act". Plaintiff's Opposition at 14. Besides the fact that the court has rejected plaintiff's theory under that Act, plaintiff's attempt to state a cause of action in this context is not even based upon a statute.

■ Other jurisdictions have recognized a cause of action for unauthorized disclosure of information obtained through the physician-patient relationship. *Hammonds v. Aetna Casualty & Surety Co.,* 243 F.Supp. 793, 795–802 (N.D.Ohio 1965); *Horne v. Patton,* 291 Ala. 701, 287 So.2d 824, 827–30 (1974); *Hague v. Williams,* 37 N.J. 328, 335–36, 181 A.2d 345, 349 (1962); *Simonson v. Swenson,* 104 Neb. 224, 177 N.W. 831 (1920); *Felis v. Greenberg,* 51 Misc.2d 441, 443, 273 N.Y.S.2d 288, 290 (N.Y.Sup.Ct.1966); *Berry v. Moench,* 8 Utah 2d 191, 331 P.2d 814, 817 (1958); *cf. Hannaway v. Cole,* 2 Mass.App. 847, 311 N.E.2d 924, 925 (1974) (dicta); *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333, 337 (1976) (dicta); *Alexander v. Knight,* 197 Pa.Super. 79, 177 A.2d 142, 146 (1962) (dicta); *Schaffer v. Spicer,* 215 N.W.2d 134, 136–38 (S.Dak.1974) (information disclosed in affidavit). The plaintiff, however, has not persuaded this court that such a cause of action should or would be recognized by the courts of this jurisdiction. Furthermore, plaintiff's invasion of privacy action is sufficient to redress any breach of the confidentiality of the physician-patient relationship. Thus, defendants' motion for summary judgment on plaintiff's claim based on the confidentiality of the physician-patient relationship will be granted.

C. *Claims of Defamation and Invasion of Privacy.*

In seeking summary judgment on plaintiff's claim of defamation and invasion of privacy, the District of Columbia, Russo, and Dr. West rely on the memorandum of points and authorities submitted by the *Post* and Dash in support of their motion for summary judgment. The "District of Columbia defendants," however, have ignored the distinction between the status of the *Post* and Dash as members of the press,

and therefore protected by the First Amendment, and themselves. This is relevant to the defamation claim, on which the court has granted summary judgment for the *Post* and Dash on the basis of the plaintiff's inability to show actual malice on their part and the fact that the plaintiff is libel-proof. Because Dr. West, *et al.*, are not protected by the First Amendment, the plaintiff does not have to show actual malice to prevail on his defamation claim against them. Therefore, the court will only grant summary judgment for those defendants as to the defamation claim on the ground that the plaintiff is libel-proof (i. e. defamation-proof). It is clear in this case, as mentioned earlier, that the plaintiff is libel-proof and these defendants should not be required to defend against the defamation claim. Therefore, the motion of the District of Columbia, Russo and Dr. West for summary judgment on plaintiff defamation claim will be granted.

█ Plaintiff's invasion of privacy claims against these defendants present more difficult questions. Once again, the plaintiff need not show actual malice in order to recover from these defendants. Furthermore, although the facts concerning plaintiff's use of drugs and his status as an inactive NTA patient may have been public facts that the *Post* was free to publish once they were disclosed, it is not so clear that the alleged initial disclosure of these facts by Dr. West was also the publication of public facts. The effect of the alleged physician-patient relationship and the confidentiality provisions of 21 U.S.C. § 1175 is also unclear as to the initial disclosure by West. These standards may have placed the information disclosed outside the scope of legitimate public concern. Thus, the defendants' reliance on the arguments of the *Post* and Dash is insufficient to allow the court to grant summary judgment as to plaintiff's invasion of privacy claims against the District of Columbia defendants.

Furthermore, the effect of whether plaintiff's NTA status may have been disclosed on March 1, 1976 on a bail agency form that was filed with a United States Magistrate after the plaintiff was arrested on the Sting charges is unclear. As to the District defendants, a factual issue also remains as to whether Dr. West falsely stated the results of the drug test that was performed when the plaintiff was arrested. Therefore, defendants' motion for summary judgment will be denied on this ground also.

## III. *Jurisdiction.*

█ The District of Columbia defendants' have also moved to dismiss the complaint for failure to meet the jurisdictional amount requirements of 28 U.S.C. §§ 1331, 1332. Because the court has granted summary judgment for the defendants on all of the claims except the invasion of privacy claims against the District of Columbia defendants, the case is now a diversity case and the only jurisdictional amount issue is under § 1332. On the remaining claims the plaintiff seeks to recover $150,000 in actual damages and $750,000 in punitive damages. Clearly, plaintiff is not entitled to nor will he possibly recover these amounts. The only concern of the court, however, is whether there is a sufficient allegation of the $10,000 jurisdictional amount in controversy. Plaintiff submits that the allegations of substantial violations of plaintiff's rights and person are sufficient to rebut a claim that the jurisdictional amount has not been met.

An allegation that the claim meets the jurisdictional amount must be made in good faith with a reasonable expectation of a recovery of a sum at least equal to the jurisdictional amount. 1 *Moore's Federal Practice* ¶ 0.92[1], at 852–53 (1977). "To justify dismissal, however, it must appear to a legal certainty that the claim is for less than the jurisdictional amount . . . . The more realistic approach permits all but the most flagrant cases to proceed to trial since in many cases the amount in controversy is closely linked to the merits." 1 *Moore's Federal Practice* ¶ 0.92[1], at 854–59 (1977). Thus, although this case may be close to a flagrant abuse of the good faith allegation requirement, the court will allow the plaintiff to proceed on his remaining

claims in this court. Therefore, defendants' motion to dismiss the complaint on jurisdictional grounds will be denied. One final note, there appears to have been at least a minimal invasion of plaintiff's privacy in this case and although plaintiff may only recover nominal damages for the intrusion, the *in forma pauperis* complaint cannot be characterized as frivolous so as to warrant dismissal under 28 U.S.C. § 1915(d).

Therefore, in accordance with the memorandum opinion above, it is, by the court, this 27th day of March, 1978,

ORDERED that the motion for summary judgment of *The Washington Post* and Leon Dash, Jr. is granted in its entirety; and it is further

ORDERED that the motion for summary judgment of the District of Columbia, Albert P. Russo, and Dr. Fred West is granted as to Counts I, II, III, IV, V and VI of the plaintiff's complaint and denied as to Counts VII and VIII of plaintiff's complaint; and it is further

ORDERED that a status call shall be held on April 7, 1978 at 10:00 a.m.