Ruble LANGSTON, Individually and as Trustee of the Three L Trust, et al, Appellants,

v.

EAGLE PUBLISHING COMPANY a/k/a Eagle Printing Company, et al, Appellees.

No. 10–85–214–CV.

Court of Appeals of Texas, Waco.

Sept. 4, 1986.

Rehearing Denied Oct. 16, 1986.

Second Motion for Rehearing Denied Nov. 13, 1986.

Perry Wesbrooks, Hank Rugeley, The Wesbrooks Firm, P.C., Wichita Falls, for appellants.

R. James George, Jr., David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellees.

## OPINION

THOMAS, Justice.

This is a libel suit in which the plaintiffs appeal from a summary judgment that was entered in favor of the defendants. Appellants, who were the plaintiffs below, are: (1) Ruble Langston; (2) the Three L Trust, which sued through its trustee, Ruble

Langston; (3) Trailite, Inc., a corporation which manufactured livestock trailers; and (4) Michael Luther, a shareholder and president of Trailite.[1] Defendants, now appellees, are the Eagle Publishing Company, which publishes the Bryan-College Station Eagle, publisher John Williams, editor Glenn Dromgoole and reporter Jann Snell.

The libel suit centers around eight newspaper articles published in the Bryan-College Station Eagle between June 21, 1981, and March 3, 1983. In these articles, Snell chronicled Trailite's dispute with the Internal Revenue Service over delinquent taxes, the proceedings relating to Trailite's Chapter 11 bankruptcy, the filing of a consumer-fraud suit by then Attorney General Mark White against Trailite and others,[2] the political charges that arose between the 1982 gubernatorial campaigns of Bill Clements and Mark White over the filing of the consumer-fraud suit, and the filing of the libel suit. The plaintiffs contend, in particular, that the articles published on July 21 and November 9, 1982, contained libelous statements because Snell had falsely and maliciously reported that the attorney general had alleged in the consumer-fraud suit that the Three L Trust had been "set up" or "used" as a "sham" to avoid "direct legal obligations to unhappy Trailite customers".

Several questions on appeal relate to individual plaintiffs. The defendants contend that they were entitled to a summary judgment against Luther because the articles did not defame him as a matter of law. They also argue that the summary judgment was properly entered against Trailite and Luther because their claims had been conclusively barred by limitation. Likewise, the defendants insist that the summary judgment against the Three L Trust was proper because a trust cannot bring a libel suit for its own defamation.

As far as the plaintiffs as a whole are concerned, the two sides differ over whether the defendants were protected as a mat-

1. The Three L Trust owned a majority of Trailite's shares.

2. The defendants in the consumer-fraud suit were Trailite, the Three L Trust, Ruble Lang-

ston, who was sued individually and as the trustee of the Three L Trust, Michael Luther and Jane Langston, Ruble Langston's wife.

ter of law by the privilege in article 5432. This statute provided, among other things, that a libel suit cannot be based on a fair, true and impartial account by a newspaper of judicial proceedings. Tex.Rev.Civ.Stat. Ann. art. 5432(1) (Vernon 1958) (repealed effective September 1, 1985, and now codified at Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1986)). The plaintiffs argue that the attorney general's original pleading in the consumer-fraud suit was not a part of a "judicial proceeding" because the court had not taken any action on the pleading when the challenged articles were written. Furthermore, they insist that material fact issues existed in the summary-judgment evidence on malice, which destroys the conditional privilege under article 5432, and on whether the articles of July 21 and November 9, 1982, were a fair, true and impartial account of the attorney general's allegations relating to the Three L Trust. Other questions relate to the libel-proof doctrine and whether the summary-judgment evidence conclusively established that the plaintiffs' reputations could not have been damaged by the articles any more than they had already been damaged by the allegations in the consumer-fraud suit. The summary judgment will be affirmed against Trailite, the Three L Trust and Luther. However, the summary judgment against Langston will be reversed and his causes of action remanded for a trial.

The summary judgment will be reviewed under the rules in *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex. 1985). Under these rules, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. *Id;* Tex.R.Civ.P. 166–A(c). When deciding whether there is a material fact issue, evidence favorable to the non-movant must be taken as true. *Nixon*, 690 S.W.2d at 548–49. Likewise, every reasonable inference and doubt must be indulged and resolved in the non-movant's favor. *Id.* at 549. When a defendant has been granted a summary judgment, as here, the question on appeal is whether the summary-judg-

ment proof establishes as a matter of law that there is no genuine issue of material fact on one or more of the essential elements of the plaintiff's cause of action. *See Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970).

■ The defendants moved for a summary judgment against Luther on the grounds that limitation had barred his claims and that the articles did not defame him as a matter of law. Because the court did not specify in the summary judgment the ground or grounds on which it was granted, Luther had to challenge each of these grounds on appeal or risk having the summary judgment summarily affirmed on the unchallenged grounds. *See Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 173 (Tex.1981). He did not brief or attack either ground by a point of error, and therefore the summary judgment against him is affirmed on both of the unchallenged grounds. *See id.*

■ The defendants also moved for a summary judgment against Trailite on the ground that its libel claims were conclusively barred by limitation. Trailite attacks this ground in the sixth point of error. A libel action is barred unless it is brought within one year after the date that it accrues. Tex.Rev.Civ.Stat.Ann. art. 5524 (Vernon 1958) (repealed effective September 1, 1985, and now codified at Tex.Civ. Prac. & Rem.Code Ann. § 16.002 (Vernon 1986)). Ordinarily, an action for libel accrues on the date that the defamatory matter is published and not from the date of its damaging consequences. *Moore & Associates v. Metropolitan Life Ins.*, 604 S.W.2d 487, 491 (Tex.Civ.App.—Dallas, no Writ). However, the "discovery rule" is applicable to libel actions. *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976). Under this rule, a statute of limitation does not begin to run until the injured party learns of or, in the exercise of reasonable diligence, should have learned of the injury or wrong giving rise to the action. *Id.* The discovery rule is not applicable in this instance because the allegedly defamatory matter

was communicated through a mass medium. *See id.* Because the defendants had moved for a summary judgment, they had the burden of showing that Trailite's claims were barred by limitation as a matter of law. *See Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983).

A brief synopsis of the events is in order before the limitation question can be decided. Langston, acting individually and as the trustee of the Three L Trust, originally filed the libel suit against the defendants on February 28, 1983. He alleged in the original petition that the two articles, dated July 21 and November 9, 1982, had libeled him and the trust because Snell had falsely and maliciously reported that the attorney general had alleged in the consumer-fraud suit that the trust had been set up and used as a sham to avoid direct legal obligations to unhappy Trailite customers. Langston attached a copy of both articles to the original petition.

On July 18, 1983, in a first amended original petition, Langston and Luther purportedly instituted a derivative libel action against the defendants on behalf of Trailite and its shareholders under article 5.14 of the Texas Business Corporation Act. *See* Tex.Bus.Corp.Act Ann. art. 5.14 (Vernon 1980). Langston alleged that he was a shareholder of Trailite in his capacity as the trustee of the Three L Trust, and Luther also alleged that he was one of Trailite's shareholders. The first amended original petition contained essentially the same complaints about the articles of July 21 and November 9, 1982, as the original petition. However, as the derivative plaintiffs, Langston and Luther also asserted that Trailite had been libeled by these two articles, as well as by two other articles published on October 14, 1982, and March 2, 1983. The October 14 article reported the dispute which developed between the political campaigns of Bill Clements and Mark White over the filing of the consumer-fraud suit. The headline of the March 2 article erroneously stated that Trailite had filed the libel suit against the defendants, while the body of the article correctly reported that the suit had been filed by Langston on behalf of himself and the Three L Trust. However, the plaintiffs did not specify how Trailite had been defamed by the four articles, which were attached as exhibits to the first amended original petition.

By a second amended original petition, filed on January 26, 1984, Trailite and Luther joined the libel suit as plaintiffs in their own right, and the plaintiffs recited in the pleading that the derivative suit, which Langston and Luther had purportedly filed on behalf of Trailite and its shareholders, was "discontinued". Langston remained in the suit as a plaintiff in his own right and as the trustee of the Three L Trust. The second amended original petition, to which the plaintiffs attached the four articles dated July 21, October 14 and November 9, 1982, and March 2, 1983, contained essentially the same allegations as the first amended original petition. The plaintiffs still did not allege how Trailite had been defamed by the four articles.

When the defendants moved for a summary judgment against Trailite on the limitation ground, they argued that the derivative suit had not tolled the statute of limitation on Trailite's libel claims because the derivative suit had been improperly brought as a matter of law. Consequently, they contended that Trailite had not tolled the statute of limitation until it joined the suit as a plaintiff in its own right on January 26, 1984. They argued that all of Trailite's libel claims, to the extent that they were based on the articles published prior to January 26, 1983, had been conclusively barred by limitation.

■ Before a shareholder can bring a derivative suit in the right of a corporation, he must show that something beyond unsound business judgment has governed the board of directors' refusal to act. *Zauber v. Murray Sav. Ass'n,* 591 S.W.2d 932, 936 (Tex.Civ.App.—Dallas 1979), writ ref'd n.r.e., 601 S.W.2d 940 (Tex.1980). He cannot institute a derivative suit on the corporation's behalf by merely showing that the decision of the board of directors not to act was unwise, inexpedient, negligent or im-

prudent. *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846, 849 (1889). Instead, the shareholder must plead and prove that the board of directors' refusal to act was "characterized by *ultra vires*, fraudulent, and injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless." *Id.*

The minutes of the July 13, 1983, meeting of Trailite's board of directors, which were attached to Luther's affidavit in opposition to the defendants' motion for a summary judgment, reflected the following:

Dr. Ruble Langston, Board Chairman and as Trustee of The Three L Trust stated that time was running out pursuant to the filing of a libel suit against the Bryan-College Station Eagle newspaper and moved that the Board of Directors file suit against the Bryan-College Station Eagle. The matter was brought to a vote with Duane Johnson and Jane Langston voting against the motion stating that the Plan of Reorganization implementation would have to come first. Ruble Langston and Michael Luther voted for the motion but concurred that the implementation of the Plan was all-important as a valid reason. The end result of the lack of a majority vote by the Board of Directors was a recommendation by the Board of Directors that a class action suit be brought not by Trailite, Inc., but by the shareholders against the Bryan-College Station Eagle newspaper for the benefit of all shareholders of Trailite, Inc., at the request of Ruble Langston as Trustee of the Three L Trust and of Michael Luther, President of Trailite, Inc.

The first amended original petition, which was filed on July 18, 1983, contained the following allegations:

[T]his suit is a derivative suit brought in the right of Trailite, Inc., a Texas corporation. The Plaintiff, Ruble Langston in the capacity as Trustee of the Three L Trust, is a record legal owner of shares of stock owned by the Three L Trust in Trailite, Inc. at the time the matter is complained about herein, and that Michael Luther will also show that he is a Shareholder in Trailite, Inc., a domestic corporation. That such Shareholders would show that heretofore as Shareholders they sought to have the Board of Directors of Trailite, Inc. to bring a lawsuit in behalf of Trailite, Inc. and its Shareholders for libel and defamation affecting Trailite, Inc. and its Shareholders, but that such Board of Directors by Board Resolution has declined to bring such action by reason of the fact that Trailite, Inc. is still under the jurisdiction of the United States Bankruptcy Court, Northern District of Texas, Dallas Division in Bk. No. 381–01112, a Chapter 11 Reorganization proceeding. That furthermore by reason of the fact that the Supreme Court of Texas in *Newspapers, Inc. v. Matthews*, [161 Tex. 284] 339 S.W.2d 890 [1960], has held that the owners of a corporation may have a right of action under the circumstances and conditions presented herein, and in addition that Michael Luther, as a Shareholder of Trailite, Inc., gives notice hereby that he shall move at the proper time that this action be permitted under Rule 42 of the Texas Rules of Civil Procedure as a class action in behalf of all Shareholders of Trailite, Inc.

Langston and Luther not only failed to plead that the board of directors had refused to sue because of questionable motives, but they failed to introduce summary-judgment evidence sufficient to raise a fact issue about the board's decision being governed by any improper motives. Because the summary-judgment evidence conclusively established that Trailite's board of directors had refused to sue because of business considerations, Langston and Luther could not institute or prosecute the derivative suit on Trailite's behalf as a matter of law. *See Cates*, 11 S.W. at 849. Accordingly, their attempt to file the derivative suit was ineffective as a matter of law, and the purported derivative suit did

not toll the statute of limitation on any libel claim that Trailite could have asserted in its own right.

Trailite did not toll the statute of limitation until it asserted a libel claim in its own right on January 26, 1984. Consequently, as far as its causes of action are concerned, the one-year statute of limitation conclusively barred all libel claims which Trailite could have asserted based on the articles published before January 26, 1983. Thus, the articles published on June 21 and June 23, 1981, and on July 21, October 14, October 15 and November 9, 1982, could not have supported Trailite's libel action as a matter of law. Point six is overruled because the court properly entered the summary judgment against Trailite on the ground of limitation with respect to all of the articles published before January 26, 1983.

The only articles on which Trailite could base a libel claim were those published on March 2 and March 3, 1983. However, the defendants also asserted as a ground for the summary judgment that Trailite had not been defamed by either of these articles as a matter of law or by the erroneous headline, "Trailer firm sues Eagle for libel", which accompanied the March 2 article. The summary judgment, with respect to the articles of March 2 and March 3, 1983, must be affirmed on this particular ground because Trailite has failed to challenge the ground on appeal by a point of error. *See Sullivan*, 616 S.W.2d at 173. Therefore, the summary judgment is affirmed against Trailite on all of its libel claims.

The defendants also moved for a summary judgment against the Three L Trust on the ground that it could not assert a claim for its own defamation as a matter of law. They contended that, as with a corporation or partnership, any libel action for defamation of the trust belonged to Langston as the trustee or to the trust's owners and not to the trust as a business entity. The Three L Trust charges in the fifth point of error that the court erred when it entered

the summary judgment against it on this ground.

Article 5430, which defined libel at the time the summary judgment was entered, provided:

A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of *one who is alive*, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury.

Tex.Rev.Civ.Stat.Ann. art. 5430 (Vernon 1958) (repealed effective September 1, 1985, and now codified at Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon 1986)) (emphasis added). To recover for an injury to reputation under this statute, the defamation must "injure the reputation of one who is alive". *Id.*

Apparently, the question whether a trust can assert a libel claim for its own defamation has never been decided in Texas. At least the parties have not cited any direct authority in support of their contentions, and no such authority has been found. However, a similar question has been decided with respect to corporations and partnerships. In *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 893 (1960), the Texas Supreme Court could "find no authority for a right of action for defamation of a business disassociated and distinct from a defamation of its owner." Although the Court stated that "the very wording of the libel statute precludes its application to a business", it nevertheless recognized that a corporation or a partnership could be libeled. *Id.* However, the defamation is of the owners of the corporation or partnership and not of the business itself. *Id.* Any recovery under article 5432 will be for the owner's defamation, whether the owner is an individual, partnership or corporation. *Id.*

■ The same reasoning that precludes a corporation or partnership from asserting a libel claim based on its own defamation must likewise preclude a trust from asserting such an action in its own right. Therefore, any cause of action for defamation of the trust belonged to Langston as trustee or to the trust's owners. Point five is overruled because the court properly entered a summary judgment against the Three L Trust on the ground that it could not assert a libel claim based on its own defamation as a matter of law. Therefore, the summary judgment against the Three L Trust is affirmed.

To this point, the summary judgment has been affirmed against Trailite, Luther and the Three L Trust. The only question remaining is whether the court properly entered the summary judgment against Langston. The defendants moved for a summary against Langston on the grounds that: (1) the articles of July 21 and November 9, 1982, were privileged under article 5432 as a matter of law; (2) the article of March 2, 1983, which was accompanied by the erroneous headline "Trailer firm sues Eagle for libel", was privileged under article 5432 and did not defame Langston as a matter of law; (3) the article of October 14, 1982, was privileged under article 5432 and did not defame Langston as a matter of law; and (4) Langston could not be defamed by any of the articles, even if they were defamatory and not privileged, because he was "libel-proof" as a matter of law.

A brief, chronological description of each article will place the issues in perspective as they relate to the summary judgment against Langston. In the first article published on June 21, 1981, Snell reported that the Internal Revenue Service had scheduled an auction of Trailite's land and buildings to satisfy tax liens for excise taxes and employment taxes. She reported in the second article, published on June 23, 1981, that the auction had been postponed when Trailite filed for reorganization under Chapter 11 of the Bankruptcy Code. Snell did not mention Langston or the Three L Trust in either article, but she did report that Trailite was being investigated by the Texas Attorney General's Office for "consumer fraud allegations". Although the plaintiffs attached these two articles to their third amended original petition as exhibits 1 and 2, they did not allege that the articles contained any libelous statements. They merely asserted that the two articles "were evidence of later malice by repetition in exhibits 3 through 8".

The article which first mentioned Langston and the Three L Trust was published on July 21, 1982. The statements in this article, which was attached as exhibit 3 to the third amended original petition, are at the center of Langston's libel complaint. Among the statements are these:

The state's attorney general Tuesday filed a consumer fraud and deceptive trade practices suit against Bryan-based Trailite Inc., a manufacturer of gooseneck type livestock trailers.

Attorney General Mark White's suit filed in 85th District Court claims that as many as 70 persons paid in advance for trailers they never received between Oct. 1, 1979, and June 15, 1981. Trailite collected in excess of $270,000, the suit claims.

Trailite officers took the orders for trailers and the advance payments, the suit says, knowing that the company didn't have the resources to purchase materials to build the trailers or ever fill their customers' orders.

\* \* \* \* \* \*

Ruble Langston, affiliated with Trailite and a trustee of Three L Trust which owns the majority interest at Trailite, said he had not received a copy of the suit and would not comment on the allegations until advised by his attorney.

\* \* \* \* \* \*

According to the suit, the Three L Trust was set up as a sham trust to avoid direct legal obligations to unhappy Trailite customers.

The suit also claims that the Trailite officials misappropriated $40,000 of their advance trailer funds for their personal

gain which "significantly contributed to the corporation's inability to meet its debts, obligations and liabilities."

Langston complained in the third amended original petition that Snell had falsely and maliciously reported that the attorney general had alleged in the consumer-fraud suit that "the Three L Trust was set up as a sham trust to avoid direct legal obligations to unhappy Trailite customers." He alleged that this statement was false because the Three L Trust had been organized in 1971 before Trailite had ever been chartered by the state and that the attorney general had not made such an allegation against the trust in the consumer-fraud suit.

The fourth article, published on October 14, 1982, did mention Langston and the Three L Trust in connection with the political charges that arose in the governor's race over the filing of the consumer-fraud suit against Trailite:

Ruble Langston, the owner of the majority interest in Trailite, who denies the fraud allegations [in the consumer-fraud suit], supplied Clements' headquarters with complaints against White's staff [in the attorney general's office] which run the gamut from unethical to incompetent behavior.

This article was attached as exhibit 4 to the third amended original petition.

Snell reported in the fifth article, published on October 15, 1982, that the consumer-fraud suit against Trailite had been "put on hold by a federal bankruptcy court." This article, which did not mention Langston or the Three L Trust, was attached to the third amended original petition as exhibit 5.

In her sixth article, published on November 9, 1982, Snell reported that the federal bankruptcy court had ruled that the attorney general could proceed with the consumer-fraud suit against Trailite in the state court. The statements in this article, which was attached to the third amended original petition as exhibit 6, are also at the heart of Langston's complaint:

Dallas bankruptcy Judge John C. Ford has decided a local district court can try

a consumer fraud-deceptive trace practices suit filed by the state against a local farm trailer manufacturer.

Attorney General Mark White's office filed the suit against Trailite, located near the intersection of Highway 21 and Highway 6, last July in the 85th District Court.

\* \* \* \* \* \*

Along with sending the Clements' campaign a copy of their complaint, Ruble Langston, a Trailite representative, also provided a written letter accusing the attorney general's office of various unethical and unprofessional actions.

Langston, who denies all the charges in White's suit, is a trustee of the Three L Trust, which owns a majority interest in Trailite and is also mentioned as a defendant in the attorney general's suit.

\* \* \* \* \* \*

Bowers said he intends to prove that as many as 70 persons paid in advance for trailers they never received between Oct. 1, 1979 and June 15, 1981. Trailite collected in excess of $270,000, the suit claims.

Further, Bowers said he plans to show that the Three L Trust was used as a sham to avoid direct legal obligations to unhappy Trailite customers.

Langston denies these allegations, saying the trust was created in the early 1970's and has never been used as a sham for Trailite.

On March 2, 1983, Snell reported the following in the seventh article in the series:

Trailer firm sues Eagle for libel

A representative of a Bryan farm trailer manufacturing firm filed a libel suit Monday against the Bryan-College Station Eagle, complaining the newspaper falsely published details of a consumer fraud suit brought against the firm by the Texas Attorney General.

The suit, which names no specific amount sought in damages, was filed in 85th District Court by Ruble G. Lang-

ston, trustee of Three L Trust which owns Trailite Inc., maker of livestock trailers. The action contends the Eagle incorrectly stated that Three L Trust was "set up as a sham trust to avoid direct legal obligation to unhappy Trailite customers."

The statement was contained in an article published last July about a deceptive trade practices suit filed against Langston and Trailite by the state attorney general's office. That suit contended that Trailite officers took orders for trailers and advance payments, knowing that the company did not have the means to build the trailers.

The defendants admitted that the headline which accompanied this article was erroneous. However, the headline was corrected by the eighth article which was published on March 3, 1983:

### Correction

The headline on an article in Wednesday's Eagle about a libel suit being filed against the Eagle was incorrect. The headline said,

"Trailer firm sues Eagle for libel." As the article stated, the suit was filed by Ruble G. Langston, trustee of Three L Trust, which owns a majority interest in Trailite Inc., maker of livestock trailers. Trailite itself did not file the suit.

The seventh and eighth articles were attached to the third amended original petition as exhibits 7 and 8.

■ The defendants moved for a summary judgment against Langston on the ground that he was libel-proof. They contended that his libel claims were conclusively barred because the allegations in the articles could not have damaged his reputation any more than it had already been damaged by the allegations against him and the Three L Trust in the consumer-fraud suit. Langston contends in the fourth point of error that the court erred when it entered the summary judgment against him on this ground. The libel-

proof doctrine, which is based on the premise that defamation is not actionable without damage to the plaintiff's reputation, was first announced in *Cardillo v. Doubleday & Co., Inc.,* 518 F.2d 638 (2nd Cir. 1975).[3] A libel-proof plaintiff, by definition, has suffered minimal, if any, damage to his reputation by a defamatory communication. Apparently, the doctrine has not been the subject of any Texas decisions to date.

■ During its first decade, the libel-proof doctrine has developed along two distinct pathways. One path of its development has been "issue-specific", which bars libel claims of plaintiffs who have tarnished reputations on particular issues or on a specific behavior. Under the issue-specific approach, a plaintiff's libel claim is barred when previous publicity or criminal convictions for behavior similar or identical to that described in the challenged communication have so tarnished his reputation that he could only recover nominal or minimal damages as a matter of law. Although not arising from criminal convictions, repeated, untested and widely-distributed negative publicity about the plaintiff, regarding the same subject or issue as the challenged communication, will bar his libel action under the issue-specific branch of the doctrine.

Illustrative of the issue-specific approach is the decision in *Logan v. District of Columbia,* 447 F.Supp. 1328 (D.D.C.1978), in which the plaintiff had sued a newspaper for libel because of an article which falsely reported that he had tested positively for drug use. Although the court found that the article was false and defamatory, it nevertheless held that the plaintiff was libel-proof on the specific issue of drug use because he was an admitted drug user, his use of drugs had been publicized in a book, he had been convicted of a federal narcotics violation and charged with another federal narcotics violation, and he had been committed for treatment under a federal drug treatment program. *Id.* at 1332. As a

---

**3.** An article in the Harvard Law Review contains an informative discussion of the doctrine's evolution and application. *See "The Libel-Proof Plaintiff Doctrine",* 98 Harv.L.R. 1909 (1985).

further example, a convicted bank robber would be libel-proof under the issue-specific branch of the doctrine if he is falsely reported to be a shoplifter. The same would be true of a convicted rapist who is falsely accused in a newspaper article of being a window-peeper.

 The libel-proof doctrine has also developed along a second path, called the "incremental" approach, which requires the court to evaluate the defendant's communication in its entirety and to consider the effects of the challenged portion of the communication on the plaintiff's reputation in the context of the entire communication. This branch was first announced in *Simmons Ford, Inc. v. Consumers Union of the United States*, 516 F.Supp. 742 (S.D.N.Y.1981). The incremental approach comes into play when the plaintiff only challenges a small or tangential part of an overwhelmingly negative communication. Although not plead or mentioned by name, the defendants essentially moved for a summary judgment against Langston under the incremental branch of the libel-proof doctrine. They alleged that the statements in the articles relating to Langston and the Three L Trust, which he challenged, could not have damaged his reputation any more than the unchallenged allegations in the consumer-fraud suit, which were also reported in the articles, had already damaged his reputation.

In *Jackson v. Longcope*, 394 Mass. 577, 578, 476 N.E.2d 617, 618–19 (1985), a plaintiff was held libel-proof under the incremental approach when he challenged the portion of an article which misstated his activities in connection with a stolen car but failed to challenge the remaining portions of the article which reported that he had a criminal record for murder and rape. When the plaintiff challenges certain statements in a communication, which damage his reputation far less than the damage necessarily inflicted on his reputation by other unchallenged statements in the same communication, the incremental libel-proof doctrine bars his libel claim.

Although developed in the federal courts, the libel-proof doctrine has not garnered unanimous support even in the federal system. In *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C.Cir.1984), the Circuit Court of Appeals for the District of Columbia rejected both branches of the libel-proof doctrine as a "fundamentally bad idea". Although the libel-proof doctrine has not been discussed, accepted or rejected by name in any Texas decision, the Texas Supreme Court has rejected the specific argument that a plaintiff's libel claim was barred because his reputation had been so tarnished as to make it damage-proof. In *Bell Pub. Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197, 203 (1943), the court commented:

> We overrule defendants' contention that they showed as a matter of law that plaintiffs' reputation was bad and that therefore it had suffered no damages. The evidence upon the subject of plaintiffs' good or bad reputation was conflicting. Many witnesses for both sides testified upon this subject. The testimony that plaintiff's reputation was bad could not properly be urged as a complete bar to the cause of action but was proper to be considered by the jury in mitigation of damages.

Traditionally, the legislature and the courts in Texas have zealously guarded the right of a citizen to defend his reputation and name, however tarnished, from libelous publications. *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 228 S.W.2d 499 (1950). The quote from *Bell Pub. Co.* merely reiterates that policy. *See also Macfadden's Publications v. Hardy*, 95 S.W.2d 1023, 1024–25 (Tex.Civ.App.—Waco 1936, writ ref'd) (plaintiff, who was falsely accused of murder in the defendant's publication, had a record of or been charged with twenty-eight other felonies which could be shown in mitigation of his actual damages). In fact, article 5431 provided that evidence of a previously tarnished reputation may be proved in mitigation of ac-

tual or exemplary damages.[4] Tex.Rev.Civ. Stat.Ann. art. 5431 (Vernon 1958) (repealed effective September 1, 1985, and now codified at Tex.Civ.Prac. & Rem.Code Ann. § 73.003 (Vernon 1986)).

██ A kernel of truth and common sense underlies the libel-proof doctrine: the reputation of an Adolph Hitler or Charles Manson could not be damaged as a matter of law, and therefore a court's time and resources should not be expended in litigating their spurious libel claims. Perhaps, in considering a libel action by an individual with an equally despicable reputation, the libel-proof doctrine should be invoked in furtherance of judicial economy. However, suffice it to say that Langston's reputation, however tarnished by the allegations of civil wrongdoing in the consumer-fraud suit, does not require the invocation of either branch of the libel-proof doctrine to summarily bar his action for defamation. Accordingly, point four is sustained.

Langston contends in his third point of error that the court erred when it granted the summary judgment against him based on the privilege contained in article 5432. This statute provided that no libel claim could be based on a fair, true and impartial account by a newspaper of "proceedings in a court of justice". Tex.Rev.Civ.Stat.Ann. art. 5432(1) (Vernon 1958) (repealed effective September 1, 1985 and now codified at Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1986)). Langston argues that the attorney general's original petition in the consumer-fraud suit was not part of a "judicial proceeding" because the court had not acted on the pleading at the time the challenged articles were written. Two early Texas cases support his argument in this regard. *See Houston Chronicle Pub. Co. v. McDavid*, 173 S.W. 467, 471 (Tex.Civ.

App.—Austin 1914, writ ref'd); *Sutton v. A.H. Belo & Co.*, 64 S.W. 686, 687 (Tex.Civ. App.1901, no writ). In each case, the court held that a pleading is not a part of a judicial proceeding until the court has acted on it in some way. The reasoning behind such a holding is best illustrated by this quote taken from the opinion in *Sutton:*

> If pleadings and other other documents can be published to the world by anyone who gets access to them, no more effectual way of doing malicious mischief with impunity could be devised than filing papers containing false and scurrilous charges, and getting those printed as news. The public have no rights to any information in private suits until they come up for public hearing or action in open court, and, when any publication is made involving such matters, they possess no privilege, and the publication must rest on either nonlibelous character or truth to defend it.

*Sutton*, 64 S.W. at 687.

Although the holdings in *Sutton* and *Houston Chronicle Pub. Co.* have not previously been rejected, they must now be rejected because of the decision in *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975). There, the United States Supreme Court held that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection" and noted that, "[a]t the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." 95 S.Ct. at 1047. The holdings in *Sutton* and *Houston Chronicle Pub. Co.* are clearly

---

**4.** Article 5431 provided: "In any action for libel, in determining the extent and source of actual damage and in mitigation of exemplary or punitive damage, the defendant may give in evidence, if specially pleaded, all material facts and circumstances surrounding such claim of damage and the defense thereto, and also all facts and circumstances under which the libelous publication was made, and any public apology, correction or retraction made and publish-

ed by him of the libel complained of, and may also give in evidence, if specially pleaded in mitigation of exemplary or punitive damage, the intention with which the libelous publication was made. The truth of the statement, or statements, in such publication shall be a defense to such action." Tex.Rev.Civ.Stat.Ann. art. 5431 (Vernon 1958) (repealed effective September 1, 1985, and now codified at Tex.Civ.Prac. & Rem. Code Ann. § 73.003 (Vernon 1986)).

contrary to the principle announced in *Cox Broadcasting Corporation.*

 Because the attorney general's original petition in the consumer-fraud suit was open to the public's inspection as an official court record, the defendants could truthfully publish, without malice, any allegation contained in the pleading without fear of liability. A newspaper is sheltered by the privilege under article 5432 as long as it publishes, without malice, a fair, true and impartial account of the allegations in a pleading which is open to the public's inspection as a part of the official court records of the case, regardless of whether the court has then taken any action on the pleading. Accordingly, point three is overruled.[5]

In their third amended original petition, which was the operative pleading when the court entered the summary judgment, the plaintiffs generally alleged that they had been libeled by the articles published on July 21, October 14, October 15 and November 9, 1982, as well as by those published on March 2 and March 3, 1983. Of these articles, they only quoted as libelous the portion of the articles published on July 21 and November 9, 1982, which referred to the Three L Trust as being set up as a sham to avoid direct legal obligations to unhappy Trailite customers. However, the plaintiffs did not specify how any of the remaining articles had libeled them. They attached these six articles to the pleading as exhibits 3 through 8. Although the plaintiffs attached to the pleading copies of the articles published on June 21 and June 23, 1981, they did not allege that these articles were libelous in any manner but merely asserted that they had "provided a legal foundation for later libelous and malicious actions by the defendants" in the articles attached as exhibits 3 through 8.

 Each article, assuming that they were libelous to Langston, could have been the basis for a separate cause of action for libel. *See Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246, 251 (1942). Article 5432 provided a qualified or conditional privilege. *Denton Publishing Company v. Boyd,* 460 S.W.2d 881, 884 (Tex.1970). A newspaper needs the protection of this statute only when the subject matter of the newspaper account is false and defamatory. The qualified privilege under article 5432 is lost by proof that the defendant was actuated by malice when he published the false and defamatory matter. *Id.* Ordinarily, the plaintiff must prove malice to defeat the privilege in a trial on the merits. *Id.* However, when the defendant moves for a summary judgment on a plaintiff's libel claim based on the privilege under article 5432, the defendant must negate malice as a matter of law. *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex.1985). Malice sufficient to defeat the conditional privilege in article 5432 means publication with knowledge that it was false or with reckless disregard of whether it was false. *Dun and Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 900 (Tex.1970).

Langston contends in his second point of error that the court erred when it granted the summary judgment against him based on the privilege under article 5432. He argues that the defendants failed to conclusively negate malice. The defendants argue that their affidavits, which were filed in connection with the response to the plaintiffs' motion for a summary judgment, negated malice as a matter of law "with their clear, direct and positive statements concerning their involvement and lack of knowledge of any falsity." The affidavits on which the defendants rely to negate malice were made by publisher John

---

5. Langston also contended under the third point of error that the articles reporting the allegations in the consumer-fraud suit were not privileged under article 5432 as a fair, true and impartial account of "any other official proceedings authorized by law in the administration of the law" or of "executive proceedings". These two additional contentions are not reached or decided because of the holding that the attorney general's pleading in the consumer-fraud suit was a part of the "proceedings in a court of justice".

Williams, editor Glenn Dromgoole and reporter Jann Snell.

■ Rule 166–A(c) provides that a summary judgment may be based on the uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and "could have been readily controverted". Tex.R.Civ.P. 166–A(c). The affidavits, which related to the defendants' state of mind, did not conclusively negate malice because they were each given by interested witnesses whose denials of malicious intent could not be readily controverted.[6] *See Beaumont Enterprise & Journal,* 687 S.W.2d at 730. Thus, the affidavits could not support a summary judgment, and therefore the defendants failed to conclusively establish that they were entitled to a summary judgment against Langston on the ground that the articles were privileged as a matter of law under article 5432. *See id.* Point two is sustained.

The causes of action asserted by the Three L Trust, Trailite and Luther are severed from Langston's causes of action, and the summary judgment is affirmed against the Three L Trust, Trailite and Luther. However, points two and four having been sustained, the summary judgment is reversed against Langston, individually and in his representative capacity as trustee, and his causes of action are remanded for a trial on the merits. Point one is not reached.

## OPINION ON REHEARING

The Three L Trust, acting through Ruble Langston as its trustee, and Trailite, Inc.,

have filed a motion for a rehearing of that portion of the opinion in which this court affirmed the summary judgment against the trust and the corporation. Michael Luther has not asked for a rehearing.

■ They contend in their first point that this court erred when it held that the derivative suit did not toll the statute of limitation on Trailite's libel claims because the derivative suit had been improperly brought as a matter of law. They argue that the summary judgment could not be affirmed against the corporation on this basis because that particular ground had not been asserted in the motion for the summary judgment. In their second point, they contend that this court erroneously held that the derivative suit was ineffective to toll the statute of limitation on Trailite's libel claims as a matter of law. They base this point on the failure of defendants-appellees to attack Langston's and Luther's capacity to bring the derivative suit by a plea in abatement under Rule 93. *See* Tex. R.Civ.P. 93. These two points are overruled because they raise arguments and issues which were not raised by points of error in their appellate briefs. *See Aycock v. Travis County,* 255 S.W.2d 910, 914 (Tex.Civ.App.—Austin 1953, writ ref'd).

They argue in their fifth point that the summary judgment against them should have been reversed because a fact issue existed on the application of article 5432. The question relating to the application of article 5432 is never reached because Trailite's claims were conclusively barred by

**6.** Publisher John Williams' affidavit contained the following statements and denials bearing on malice: "[It has never been] the policy of *The Eagle* to falsify facts to sell newspapers. The policy of *The Eagle* is to print the news as accurately and completely as time and space permits ... I did not and do not have any personal animosity toward any of the plaintiffs nor any desire to harm them out of spite or ill will." Editor Glenn Dromgoole's affidavit, which contained statements virtually identical to those in Williams' affidavit, also stated that it was not the newspaper's policy to "color articles with inaccurate or presumed facts to the total disregard of the effects of the published state-

ment on individuals or entities." Reporter Jann Snell, who also made similar denials in her affidavit, stated: "In preparing all of these articles my primary purpose was to accurately, fairly and impartially report the truth between the Attorney General and Trailite and related parties. At no time did I have any personal animosity against Ruble Langston, Michael Luther, Trailite, Inc., the Three L Trust, or any other person or entity related to Trailite, Inc. At no time when I was writing these articles did I write what I believed to be a false statement of fact or a statement about which I had serious doubts."

limitation and the Three L Trust, as an entity, could not assert any libel claim for its own defamation as a matter of law. Therefore, point five and all other points urged in the motion for a rehearing are overruled, and the motion is denied.

■■■ Eagle Publishing Company, John Williams, Glenn Dromgoole and Jann Snell, defendants-appellees, also seek a rehearing of that portion of the opinion in which this court reversed the summary judgment against Langston, individually and in his capacity as trustee of the Three L Trust, and remanded his causes of action for a trial on the merits. The following points in their motion for rehearing must be overruled because they are based on grounds that were not asserted in the motion for a summary judgment: (point two) the summary judgment against Langston should have been affirmed because the articles published on July 21 and November 9, 1982, were constitutionally protected under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8, of the Texas Constitution; (point six) the summary judgment against Langston should have been affirmed because he had not plead a cause of action for libel based on the articles published on October 14 and 15, 1982, and March 2 and 3, 1983; (point seven) the summary judgment against Langston should have been affirmed because any libel claims that he could have asserted based on the articles published on October 15, 1982, and March 3, 1983, have been barred by limitation; and (point eight) the summary judgment against Langston should have been affirmed because the articles published on October 14 and 15, 1982, and March 2 and 3, 1983, were constitutionally protected under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8, of the Texas Constitution. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675 (Tex.1979) (holding that a summary judgment cannot be affirmed on a ground which was not urged in the motion for the summary judgment).

Each of the eight articles could have been the basis for a separate cause of action, assuming they were false and defamatory as to Langston. *See Renfro Drug Co. v. Lawson*, 138 Tex. 434, 160 S.W.2d 246, 251 (1942). Defendants-appellees contend in point one that the summary judgment should have been affirmed against Langston because they were conclusively protected by the privilege under article 5432. As noted in the opinion on the merits, defendants-appellees failed to conclusively negate malice with respect to the publication of any of the articles which precluded a summary judgment on the basis of privilege. *See Beaumont Enterprise & Journal v. Smith*, 687 S.W.2d 729, 730 (Tex.1985). Point one is overruled.

Point three, in which they argue that the summary judgment against Langston should have been affirmed on the basis of the libel-proof doctrine, is overruled because this point merely restates the argument in their brief.

They contend in point four that the summary judgment against Langston should have been affirmed because the articles published on October 14 and 15, 1982, and March 2 and 3, 1983, did not defame him as a matter of law. With respect to the articles of October 15, 1982, and March 3, 1983, defendants-appellees did not move for a summary judgment against Langston on the ground that these articles did not defame him as a matter of law. Because this ground was not asserted in the motion for the summary judgment, it cannot be considered on appeal as a basis for an affirmance. *See City of Houston*, 589 S.W.2d at 675.

However, one of the grounds on which they moved for a summary judgment against Langston was that the articles published on October 14, 1982, and March 2, 1983, did not defame him as a matter of law. The article on October 14 reported the political controversy which developed during the 1982 gubernatorial campaigns of Mark White and Bill Clements over White's handling of the consumer-fraud suit against Trailite. In this article, Snell

referred to the allegations in the consumer-fraud suit in which then Attorney General White had alleged that Trailite had "defrauded 70 persons by selling them $270,-000 worth of trailers that were never delivered and that company officials knew could never be delivered." In the very next paragraph Snell wrote: "Ruble Langston, the owner of the majority interest in Trailite, who denies the fraud allegations, supplied Clements' headquarters with complaints against White's [attorney general] staff which run the gamut from unethical to incompetent behavior."

■ The description in this article of Trailite's activities, which were alleged by the attorney general to be fraudulent and deceptive, was undoubtedly defamatory to the corporation. That portion of the article which linked Langston to the corporation, as "the owner of the majority interest in Trailite", was ambiguous in its meaning because it could have conveyed to an ordinary person the meaning that Langston, as the principal owner of the corporation, was responsible for Trailite's allegedly fraudulent and deceptive activities. *See Beaumont Enterprise & Journal,* 687 S.W.2d at 730. Thus, a fact issue existed on what meaning the article would have conveyed to an ordinary person. *See id.* Therefore, defendants-appellees were not entitled to a summary judgment against Langston on the ground that the October 14 article did not defame him as a matter of law.

In her article on March 2, 1983, which was accompanied by an erroneous headline "Trailer firm sues Eagle for libel", Snell reported that "Ruble G. Langston, trustee of the Three L Trust which owns Trailite", had filed a libel suit against the Bryan-College Station Eagle. She reported: "The [libel] action contends the Eagle incorrectly stated that [the] Three L Trust was 'set up as a sham trust to avoid direct legal [obligations] to unhappy Trailite customers'." Snell also referred to the allegations in the consumer-fraud suit by stating that "Trailite officers took orders for trailers and advance payments, knowing that the company did not have the means to build the trailers." This article, which connected Langston to Trailite through his trusteeship of the Three L Trust, was ambiguous in its meaning because the article could have conveyed to an ordinary person that Langston, as the trustee of the trust which owned the corporation, was responsible for Trailite's allegedly fraudulent and deceptive activities. Accordingly, the jury should have determined the meaning which the article would have conveyed to an ordinary person. *See id.* Defendants-appellees were not entitled to a summary judgment against Langston on the ground that the March 2, 1983, article did not defame him as a matter of law. Point four is overruled.

Point five must also be overruled because, contrary to the contentions of defendants-appellees, Langston challenged on appeal the articles of October 14 and 15, 1982, and March 2 and 3, 1983, as a basis for the summary judgment against him. He alleged and argued in his supplemental brief that all of the articles were libelous and not just those published on July 21 and November 9, 1982. Having overruled all points of error in the motion for a rehearing filed by defendants-appellees, their motion is denied.

Defendants-appellees have requested a clarification of the opinion insofar as it remands Langston's "causes of action" for a trial on the merits. Specifically, they ask that the scope of the remand be clarified with respect to the articles published on October 14 and 15, 1982, and March 2 and 3, 1983. They note that in the opinion on the merits the court "appears to determine implicitly that the articles were defamatory by reviewing the privilege issue seemingly with reference to these articles", while at the same time stating in the opinion that plaintiffs-appellants "did not specify [in their pleading] how these articles libelled them".

■ When a defendant moves for and is granted a summary judgment on the basis of article 5432, the reviewing court must assume that the questioned publication was libelous to the plaintiff. *Kelley v.*

**628**

*Rinkle,* 532 S.W.2d 947, 948 (Tex.1976). That is why all of the articles were "implicitly" assumed to be libelous to Langston in considering the argument that defendants-appellees were entitled to a judgment against him as a matter of law on the basis of privilege.

The scope of the remand is limited to the causes of action actually asserted by Langston in the third amended original petition because the trial court could not enter a summary judgment against him on any cause of action that he had not yet plead. Likewise, this court cannot affirm a summary judgment against Langston on an unplead cause of action although, if subsequently asserted on remand, the newly-plead cause of action would clearly be subject to a plea of limitation.

Plaintiffs-appellants attached all eight articles to their third amended original petition as exhibits one through eight. They generally alleged in the pleading that exhibits three through eight, being the articles published on July 21, October 14 and 15, and November 9, 1982, and March 2 and 3, 1983, were libelous to them. Exhibits one and two, which were the articles published on June 21 and 23, 1981, were not alleged to be libelous but were attached as "evidence of later malice by repetition in Exhibits 3 through 8." Although plaintiffs-appellants made relatively specific allegations with respect to the articles published on July 21, October 14 and 15, and November 9, 1982, and March 2, 1983, they did not point out how they had been defamed by the article of March 3, 1983. Although the third amended original petition was undoubtedly subject to a special exception because of Langston's failure to specifically allege, through innuendo or otherwise, how and in what manner he had been defamed by the six articles generally alleged to be libelous, his pleading was nevertheless sufficient to plead a cause of action based on the articles published on July 21, October 14 and 15, and November 9, 1982, and March 2 and 3, 1983. *See Bradstreet Co. v. Gill,* 72 Tex. 115, 9 S.W. 753, 754–55 (1888). The causes of action based on these six articles are remanded for a trial on the merits.

█ Defendants-appellees also suggested in their motion for a rehearing that the decision in *Cox Broadcasting Corporation v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975), gave them license to print any allegation in a pleading open to the public in a judicial proceeding, regardless of whether they had knowledge or serious doubts of its falsity. To accept such an argument would be to hold that a newspaper has an absolute, rather than a qualified, privilege under article 5432 to publish allegations in pleadings open to the public in a judicial proceeding. In *Cox Broadcasting Corporation,* the United States Supreme Court held that "the States may not impose sanctions on the publication of *truthful information* contained in official court records open to public inspection". 95 S.Ct. at 1047 (emphasis added). The summary-judgment evidence did not conclusively establish that the allegations against Trailite, the Three L Trust and Langston in the consumer-fraud suit were true or substantially true. Thus, defendants-appellees were not entitled to a judgment against Langston on the ground that the allegations were true or substantially true as a matter of law.