Langston v. Eagle 







AFFIRMED
MAY 31, 1990

NO. 10-89-052-CV
Trial Court
# 24,459
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

RUBLE LANGSTON, INDIVIDUALLY AND AS
TRUSTEE OF THE THREE L. TRUST,
   Appellant
v.

EAGLE PRINTING COMPANY, ET AL,
   Appellees

* * * * * * * * * * * * *

 From 272nd Judicial District Court
Brazos County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
 This is a libel suit. Ruble Langston, the plaintiff, appeals
a summary judgment that he take nothing against the defendants,
Eagle Printing Co., which publishes the Bryan-College Station
Eagle, publisher John Williams, editor Glenn Dromgoole, and
reporter Jann Snell. A prior summary judgment against Langston was
reversed. Langston v. Eagle Pub. Co., 719 S.W.2d 612 (Tex. App.--Waco 1986, writ ref'd n.r.e.). However, this summary judgment will
be affirmed.
BACKGROUND
Langston was the trustee of the Three L Trust, which owned the
controlling interest in Trailite, Inc., a manufacturer of farm
trailers. In July 1982 the Texas Attorney General filed a
consumer-fraud suit against Trailite, Langston, and the trust,
alleging that Trailite had received $270,000 for trailers which
were never manufactured. Langston claimed he was libeled in an
article published on July 21, 1982, when Snell wrote, "According to
the [consumer-fraud] suit, the Three L Trust was set up as a sham
trust to avoid direct legal [obligations] to unhappy Trailite
customers." (Emphasis added). He contended the libelous
allegation was republished on November 9, 1982, and March 2, 1983,
after the matter had ceased to be of public concern.
 INDIVIDUAL LIABILITY 
Williams and Dromgoole sought a summary judgment on the ground
that they were not personally liable for any libelous articles
because they "played no role" in their preparation or publication. 
Langston attacks this ground in his eighth point.
 The following rules determine when an individual is
personally liable for a libelous publication by a corporation:
It is the law in this state that a corporation may be civilly
responsible for libel. . . . If a corporation publishes and
circulates a libel by the aid and assistance of others, they
are equally guilty, and will be liable either jointly or
severally, as the pleader may elect. Their liability does not
grow out of the fact that they are stockholders or members of
the corporation, but springs from their active agency in
producing and circulating the libel. It is the corporation
that is the publisher, and not the persons constituting its
membership. Simply to show that persons are stockholders and
officers of the publishing corporation will not make them
responsible for libelous publication appearing in the paper,
unless it is shown that they, in some way, aided and assisted
and advised its publication or circulation, or unless their
duties as officers of the concern were of such character as
charges them with the performance of functions concerning the
publication and circulation of the paper; such duties being of
such a nature that the law would imply that such officer knew
or should have known of the publication of such libelous
matter.
Belo v. Fuller, 84 Tex. 450, 19 S.W. 616, 617 (1892) (emphasis
added). The Supreme Court reversed the judgment against the
individual Belo defendants because the evidence failed to "connect
either of [them] with the publication or circulation of the paper
containing the libel, or [show] that their duties as members or
officers of the corporation were of such character that the law
would impute to them an agency in its publication or circulation." 
Id. 
Thus, an individual can be liable for a corporation's libelous
publication in either of two ways. First, he can be liable because
of his own actions in producing or circulating the libel, i.e., by
aiding, assisting or advising in its publication or circulation. 
Second, even if not personally involved in producing or circulating
the libel, he will be liable if his corporate duties charge him
with the responsibility of publishing or circulating the newspaper. 
 
To establish Williams' and Dromgoole's individual liability,
Langston would have to prove that they had either (1) "aided and
assisted and advised its publication or circulation," or that (2)
"their duties . . . were of such character as [charged] them with
the performance of functions concerning the publication and
circulation of the paper." See id. However, the burden is on the
defendant seeking a summary judgment to conclusively establish an
affirmative defense or to conclusively negate one or more elements
of the plaintiff's cause of action. Montgomery v. Kennedy, 669
S.W.2d 309, 310-11 (Tex. 1984); Gibbs v. General Motors
Corporation, 450 S.W.2d 827, 828 (Tex. 1970). Therefore, to obtain
a summary judgment on the ground that they were not personally
responsible for any libel, Williams and Dromgoole had to
conclusively establish that they had not (1) "aided and assisted
and advised in its publication or circulation" and that (2) "their
duties . . . were [not] of such character as [charged] them with
the performance of functions concerning the publication and
circulation of the paper." See id.; Belo, 19 S.W. at 617. Because
Langston could establish their individual liability on either of
two bases, Williams and Dromgoole had to conclusively negate both
bases to obtain a summary judgment that they were not individually
liable. 
Williams and Dromgoole supported the motion by their
affidavits and an affidavit from Bob Rogers, a professor of
journalism. They contend the affidavits conclusively established
that they neither "wrote, edited, reviewed or even saw the articles
at issue prior to their publication" nor "committed any affirmative
act contributing to the publication of the articles." 
Affidavits from interested witnesses can support a summary
judgment if they contain evidence that is clear, positive, direct,
credible, free from contradictions and inconsistencies, and readily
controvertible. TEX. R. CIV. P. 166a(c); Casso v. Brand, 776
S.W.2d 551, 558 (Tex. 1989). Assuming that the affidavits met the
standards of the rule, they nevertheless contained evidence that
was only directed at conclusively negating one basis of personal
liability, i.e., that Williams and Dromgoole had no personal
involvement in writing, editing or publishing the three articles. 
The affidavits did not clearly, unequivocally, and conclusively
negate the second basis of personal liability, i.e., that Williams'
and Dromgoole's duties did not charge them with the responsibility
of publishing or circulating the Eagle. A summary
judgment is proper only when the evidence shows that, except as to
damages, "there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law on the
issues expressly set out in the motion." TEX. R. CIV. P. 166a(c). 
By failing to conclusively negate both bases for personal
liability, Williams and Dromgoole failed to prove that they were
entitled to a judgment as a matter of law on the ground that they
were not individually liable to Langston. A material fact issue on
their individual liability remained, and the court erred when it
entered a take-nothing summary judgment against Langston on that
particular ground.


 Langston's eighth point is sustained. 
However, as discussed later, the sustaining of this point will not
result in a reversal because the summary judgment is supported by
other grounds.
 ARTICLE 5432 
A "fair, true and impartial account" of a judicial proceeding
cannot be the basis of a libel action against a newspaper. TEX.
CIV. STAT. ANN. art. 5432(1) (Vernon 1958) (repealed 1985, current
version at TEX. CIV. PRAC. & REM. CODE ANN. § 73.002(b)(1) (Vernon
1986)). The defendants sought a summary judgment on the ground
that the three articles were privileged as a matter of law under
article 5432. Langston attacks this ground in his first three
points.



The state filed the consumer-fraud suit on July 20, 1982,
charging Langston, the Three L Trust, Trailite and three other
individuals with engaging in a fraudulent scheme to induce
customers of Trailite to pay for livestock trailers which were
never manufactured. According to the state, the defendants
defrauded customers out of $270,000, misappropriated $40,000 of
Trailite's funds, disregarded the corporate entity, and used
Trailite as a conduit for unjust enrichment. Trailite existed, the
state asserted, for the purpose of "insulating Defendants
individually from the claims of persons who never received their
trailers or their money back."
In an article published on July 21 Snell wrote, "According to
the suit, the Three L Trust was set up as a sham trust to avoid
direct legal [obligations] to unhappy Trailite customers." This is
the only portion of the article that Langston claimed was libelous. 
Admittedly, Jann Snell exaggerated the allegations of misconduct
against Langston by reporting that the state had alleged the trust
was "set up as a sham trust to avoid direct legal [obligations] to
unhappy Trailite customers." That type of allegation was made
against Langston, but only with regard to Trailite: i.e., the state
alleged that Trailite existed for the purpose of "insulating
Defendants individually from the claims of persons who never
received their trailers or their money back." This was
substantially equivalent to charging that Langston used the
corporation as a "sham." 
An article qualifies under article 5432, and is thus
privileged, if it is a substantially true account of a judicial
proceeding. Ray v. Times Pub. Co., 12 S.W.2d 165, 166 (Tex. Comm'n
App. 1929, holding approved). Although it may greatly exaggerate
the libel-plaintiff's misconduct alleged in a judicial proceeding,
an article is substantially true if an ordinary reader would not
attach any more opprobrium to the plaintiff's conduct merely
because of the exaggeration. Finklea v. Jacksonville Daily
Progress, 742 S.W.2d 512, 515 (Tex. App.--Tyler 1987, writ dism'd
w.o.j.); Crites v. Mullins, 697 S.W.2d 715, 717 (Tex. App.--Corpus
Christi 1985, writ ref'd n.r.e.). This is the basis for the
defendants' contention that the July 21 article, though inaccurate,
was nevertheless substantially true as a matter of law.
As noted above, Langston was charged with using Trailite to
"insulate" himself from claims of unhappy Trailite customers. 
Considering that he was charged with defrauding seventy persons out
of $270,000 and misappropriating $40,000 of corporate assets, an
allegation that Langston used the corporate entity as a "sham" to
protect himself from unhappy customers would surely be seen by an
average reader as one of the milder accusations against him. 
Consequently, the average reader would not ascribe a more venal
intent to Langston's actions merely because of an exaggerated
allegation that the trust was "set up" to accomplish the same
purpose. Thus, the July 21 article was substantially true because
the variance between the misconduct alleged in the consumer-fraud
suit and the exaggerated report of the misconduct did not result in
additional calumny. See id. 
The November 9 article, in which Snell reported that
"[Assistant Attorney General] Bowers said he plans to show that the
Three L Trust was used as a sham to avoid direct legal
[obligations] to unhappy Trailite customers," was also
substantially true.


 Repeating the exaggerated allegation in a
subsequent article, regardless of whether it was properly
attributed to Bowers, would not cause an average reader to assign
more opprobrium to Langston's conduct because of the minor variance
between the allegations in the consumer-fraud suit and what was
reported. See id. 
Finally, the March 2, 1983, article reported that Langston's
libel action "contends the Eagle incorrectly stated that [the]
Three L Trust was `set up as a sham trust to avoid direct legal
[obligations] to unhappy Trailite customers.'" Langston admits
that the article accurately quoted the basic allegation in the
libel suit. Thus, the third article was also substantially true.
Each article was substantially true as a matter of law and
thus privileged under article 5432. See Ray, 12 S.W.2d at 166. 
Because the articles could not be the basis of a libel action, the
court properly entered the summary judgment in favor of the
defendants on that ground. Points two and three are overruled.
FIRST AMENDMENT
Another ground for the summary judgment was that the three
articles were constitutionally privileged as substantially true
accounts of pleadings in judicial proceedings available to the
public. Langston challenges this ground in his ninth point. "At
the very least, the First and Fourteenth Amendments will not allow
exposing the press to liability for truthfully publishing
information released to the public in official court records." Cox
Broadcasting Corporation v. Cohn, 420 U.S. 469, 95 S.Ct. 1029,
1047, 43 L.Ed.2d 328 (1975). To hold otherwise would likely result
in the suppression of news that should be available to the public. 
Id., 95 S.Ct. at 1046.
The articles were substantially true accounts of pleadings
available to the public. Accordingly, the First Amendment
precludes attaching any liability to their publication, and the
court correctly entered the summary judgment on that ground. See
id. at 1047. Point nine is overruled.
The defendants also asked for a summary judgment on the ground
that they negated actual malice as a matter of law. A discussion
of this ground and Langston's fourth through seventh points is
unnecessary because the summary judgment is supported by other
grounds. For the same reason, the sustaining of the eighth point
does not require a reversal. Langston's tenth point, in which he
contends that the summary judgment was improperly granted because
genuine fact issues remained to be decided by a jury, is overruled. 
His cross-points, in which he complains about the denial of his
motion for a summary judgment, are likewise overruled. 
Any holdings or interpretations of statutory or case law in
our prior opinion, to the extent they are inconsistent with 
holdings or interpretations in this opinion, are rejected. See
Langston, 719 S.W.2d at 612-28. The summary judgment is affirmed. 

 
                          
Bob L. Thomas
PUBLISHChief Justice